BALTIMORE & O. R. CO. v. NEWELL.

(Circuit Court of Appeals, Third Circuit. June 10, 1912.)

No. 27 (1,594).

MASTER AND SERVANT (§ 113*)—MASTER'S LIABILITY FOR INJURY TO SERVANT —SAFE PLACE TO WORK.

Plaintiff, a brakeman employed in the yards of defendant railroad company, engaged in switching cars alongside of a freight platform which was on a level with the car floors and projected to within six or

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

eight inches of the side of the cars when on the switch track, after turning the switch to run the cars onto such track, went between two cars to uncouple them, and walked along with them until opposite the platform, when, in attempting to step out, he was caught between the cars and the platform and injured. *Held*, that defendant was not chargeable with negligence in building the platform so near the track as to render the space between them an unsafe place for plaintiff to work, since such place was not one in which plaintiff or other employés were expected or required to work, which fact was obvious to any employé.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 213, 224-227; Dec. Dig. § 113.*]

In Error to the District Court of the United States for the Western District of Pennsylvania.

Action at law by Frank A. Newell against the Baltimore & Ohio Railroad Company. Judgment for plaintiff, and defendant brings error. Reversed.

See, also, 181 Fed. 698.

Allen T. C. Gordon, of Pittsburgh, Pa., for plaintiff in error.

F. H. Guffey, of Pittsburgh, Pa., for defendant in error.

Before GRAY, BUFFINGTON, and McPHERSON, Circuit Judges.

GRAY, Circuit Judge. The defendant in error (hereinafter called the plaintiff) was for several years prior to May 6, 1909, employed by the Baltimore & Ohio Railroad Company, plaintiff in error (hereinafter called the defendant), in the capacity of a freight brakeman in the freight yards of the company, situate at Connellsville, Pa.

About 6 o'clock on the evening of the day last named, while the plaintiff was employed as a member of a shifting crew in said yards, it became necessary to shift cars onto a certain side track, a portion of which extended along a freight platform built in front of a freight station. This platform was about four feet in height above the rail, so built for the obvious purpose of being flush with the floors of the freight cars placed in front of it for loading or unloading. The length of the platform in question was about 130 feet. The westerly end of the platform is 71 feet east of the switch connecting the main track and the side track. The side track ran along the south side of the platform, and the distance between the side of the car in question and the platform was between 6 and 8 inches.

The plaintiff had worked as a brakeman for the defendant company for about six years. On the day of the accident, he was working as a brakeman of a switching crew consisting of a conductor, two flagmen and himself. This crew were engaged in switching cars out for a fast freight train that was to take them up. In the performance of this duty, it became necessary for the plaintiff, who was stationed at the first switch above referred to nearest the freight house platform, and 71 feet away from its western end, to throw the switch and admit some cars which were being pushed east from the west bound main track onto the siding in front of the freight platform. Just before the plaintiff threw the switch, the conductor of the train or-

dered some one of the crew to cut one car away from the draft of cars being pushed onto the siding. After this order was given, plaintiff threw the switch, at which time, as he faced east, he was on the left side of the track (the side nearest to the south side of the freight platform) and one of the flagmen was on the opposite side. The plaintiff did not know whether or not any other cars stood in front of the freight platform, and says he did not look to see. He testifies that he stood at the switch as the car to be cut out passed him, and saw the flagman working with the lever on the opposite side of the track from where he was standing, and, thinking that he could not "cut" the car, stepped in to help him. There seems to have been some confusion in the orders given by the conductor, who, having first ordered one car to be cut off, afterwards, and while the plaintiff was between the cars, though outside of the rail, ordered two cars to be cut out. But the facts in regard to this are immaterial. The flagman on the opposite side of the cars, having stepped out, owing probably to the change in orders,—the plaintiff, probably misunderstanding the order, remained where he was, trying to uncouple the last car from the rest of the draft, by means of the uncoupling lever. In doing this, though his feet were outside the track, he was necessarily between the projecting bodies of the freight cars and walked along with the rapidly moving cars the whole distance from the switch to the west end of the freight platform, and, as he testifies, some 15 or 20 feet alongside the platform. He then observed that, though he had lifted the coupling pin, the cars did not separate, and stepped back to see why, when he was caught between the moving car and the platform and received the injuries complained of.

On this state of the case, suit was brought in the court below, the plaintiff alleging that the injuries he received were due to the negligence of the defendant. In support of this allegation, the well-settled doctrine is invoked, that it is the duty of an employer to furnish a reasonably safe place in which the employé is required to work, and reasonably safe tools and appliances with which to work. After the close of the evidence, which elicited the material facts above stated, counsel for defendant requested the court to charge the jury that "the plaintiff has produced no evidence legally sufficient to charge the defendant with the negligence alleged in his declaration, and cannot recover"; also, "that under all the evidence, the verdict must be for the defendant." The court then submitted the case to the jury, with an oral charge, and from the judgment on the verdict in favor of the plaintiff, the present writ of error has been sued out by the defendant.

The first two assignments of error refer to the refusal to charge requests above stated. There are several other assignments of error, as to the refusal of particular points urged by the defendant and as to certain parts of the court's charge to the jury. With these we are not concerned, in the view we take of the facts upon which the principal and primary charge of negligence is made against the defendant.

Railroading is at best a somewhat dangerous employment, and requires and bespeaks reasonable prudence and care on the part of those

employed in its conduct. Undoubtedly there are, in the general course of its business, specific places and situations in which employés are required to work, and there is a clear legal duty imposed upon the railroad company to keep these places safe for that purpose. The question, therefore, that arises in the case before us is, was the space between the edge of the freight platform and the body of a freight car a place within which the plaintiff was required to work, and therefore to be kept reasonably safe for that purpose by the defendant? We think not. On the contrary, it was a place from which employés were excluded by the obvious situation. The freight platform was made for the convenience of loading goods onto cars and receiving goods from cars while standing on the siding. The platform, therefore, *was* a place upon which servants of the defendant were required to work, and which it was the duty of the defendant to make reasonably safe for that purpose. If such platform had been insecurely built, was not of sufficient width or dimensions to allow one to work thereon without danger, or, perchance. built so far from the siding as to allow one to slip between the platform and the cars, it might well be said that it was an unsafe place in which to work, for which the defendant would be liable. But it is not as to the platform as a place to work upon that the allegation of unsafety is made, but as to the space between the side of a freight car and the edge of a platform, in which no employé was required to work. Clearly the railroad company was not obliged, in considering the dimensions of that space, to provide for the safety of one who voluntarily placed himself therein.

It was not only the right but the duty of the railroad company to provide freight stations and platforms for the convenient loading and unloading of cars. It concerns the public service with which a railroad company is charged. There is nothing to show that this platform, in its location or construction, was not built with due consideration and care, not only for the business to be accommodated, but, for the safety of those required to work upon it. Not only so, expert evidence was offered (and. as we think, mistakenly rejected by the court) to show that in the railroad business of the country there was a certain standardization as to the construction of such platforms in regard to their height and distance from the tracks, from which loading and unloading was to be conducted and to which the structure in question conformed. There is no evidence, however, to show that the plaintiff, or any other employé, was required to run along between these cars while they were moving, much less that he should do so while passing the freight platform in question, and incur the dangers of so doing. This platform was not a concealed object, or one difficult of observation, and the plaintiff unquestionably was familiar with its existence and location during the whole period of his long service. Not only was the space between the car and the platform obviously not a place in which the plaintiff or any other employé was required to work, in the manner in which he alleges he was working, or in any other manner, but there is no evidence that at any other time such work was required to be done in that space. There was nothing, therefore, in the situation which could suggest to the railroad company

in constructing the platform in question, that it was encroaching upon or in any way affecting the safety of a place in which its workmen were expected to work. It provided a platform, the safety of which, as a place whereon its employés *were* required to work, it was its duty to protect. To hold that this space between the platform and the car was a place to which the obligation of the employer, to furnish a safe place in which to work, applied, would be to impose upon a railroad a liability of like kind as to every place or situation which could be called dangerous to those who placed themselves within its dangers, under circumstances however casual or unforeseen. Such places cannot be made safe as against accidental or unforeseen happenings. The operative requirements of a railroad prevent their being made so in the respect demanded by the plaintiff.

Manifestly the numerous cases cited on behalf of the plaintiff, to show liability on the part of a railroad company, where structures of any kind are placed so near the tracks upon which trains are run as to endanger those operating said trains, have no application to the present case. The place where those operating the trains—the engineers, firemen, conductors and brakemen—are required to work is, of course, in and upon the train itself, and there can be no doubt as to the duty of their employer not to expose them unreasonably to dangers while operating the train on which they are employed. To refer to only a few of these cases:

In Harvey v. Railroad Co., 166 Fed. 385, 92 C. C. A. 237, the decedent, an engine hostler, was killed in defendant's roundhouse while sitting in the cab window of an engine about to be taken to a coal chute, by his hips coming in contact with a large post supporting the roundhouse and standing within six inches of the engine cab as it passed. In another case, the company was held liable where a brakeman was struck by a switch target and thrown to the ground from a moving freight car while he was climbing the ladder to release the target, with his back to the switch, of whose dangerous proximity he had no knowledge. Also, where a switchman was killed by being knocked off of a car by the roof of a building in switching yards in the daytime. Also, where a brakeman was knocked off of a car by a guy rope suspended over the track. Where a fireman, ordered by the engineer to take notice of a box on the engine, leans out and is hit by a telegraph pole, which the company negligently allowed to remain so near the track. In Choctaw R. R. Co. v. McDade, 191 U. S. 64, 24 Sup. Ct. 24, 48 L. Ed. 96, plaintiff's decedent, a brakeman, was killed while in the discharge of his duties on a car in one of the company's trains, by being knocked off of the top thereof by the spout of a water tank maintained at an insufficient height above the car.

These cases easily distinguish themselves from the one at bar, and it requires no discussion to show how inapplicable their ratio decidendi is to the facts with which we are here concerned. They are all cases where the place in which the plaintiff was required to work,—i. e. the engine or top of a moving train, was rendered unsafe by the negligent placing of obstructions too near the tracks. Being of opinion that the record discloses no evidence of negligence on the part of the defendant

in respect to the injuries suffered by the plaintiff, we have no occasion to consider the question of contributory negligence, nor the assignments of error, other than those to which we have referred. It may be conceded that the plaintiff was injured while in the zealous performance of his duty, and that this circumstance commends him to the generous consideration of his employer, but the law, as long established and now existing, does not permit us to do otherwise than, on the grounds stated, reverse the judgment in the present case.