REESE v. PHILADELPHIA & R. RY. CO.

(Circuit Court of Appeals, Third Circuit. August 2, 1915.)

No. 1958.

MASTER AND SERVANT ⬤�longrightarrow113—INJURY TO SERVANT—LIABILITY—SAFE PLACE TO WORK.

A railroad company, locating its tracks in a street in conformity with plans approved by the city, is not bound to anticipate that a fireman will lean out in a position of unusual danger while the engine is rounding a curve near which a car may temporarily be standing, and it is not negligent for failing to construct its tracks in such a manner as to guard against the death of the fireman, though the clearance between the tracks was about two feet less than the standard.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 213, 224–227; Dec. Dig. ⬤�longrightarrow113.]

In Error to the District Court of the United States for the Eastern District of Pennsylvania; J. W. Thompson, Judge.

Action by Catherine C. Reese, administratrix, against the Philadelphia & Reading Railway Company. There was a judgment of nonsuit, and plaintiff brings error. Affirmed.

George Demming, of Philadelphia, Pa., for plaintiff in error.
Wm. Clarke Mason, of Philadelphia, Pa., for defendant in error.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

McPHERSON, Circuit Judge. The plaintiff's husband was a fireman in the defendant's service, and was killed on the night of November 18, 1912, while his engine was engaged in shifting cars on Front street, in the city of Philadelphia. The suit is brought under the Federal Employers' Liability Act, and no question is raised about the applicability of that statute. The trial judge entered a nonsuit and refused afterwards to take it off, this refusal being the final judgment under the Pennsylvania practice to which a writ of error lies. The only question before us is whether the undisputed evidence permits the inference that the company was negligent in failing to provide the deceased with a safe place to work.

The engine on which Reese was the fireman was shifting cars from one point to another, and while engaged in this duty was obliged to enter sidings or switch tracks. In so doing it was compelled to pass around curves, and in all these movements it necessarily approached

any car that might be standing on an adjacent track. The particular negligence charged is that the defendant "negligently and improperly constructed and maintained said track upon which said deceased's engine and tender was running, and the adjoining track, * * * in too close proximity to each other." It appeared that the clearance between the tracks was about two feet less than the standard, but it also appeared that the sidings had been located under proper municipal authority, and had been in use for 15 years. The two straight tracks had been put down at some earlier period, and although there was no specific testimony on the point they also had evidently been located by authority of the city; for it was testified that the general method of procedure is for councils to pass an ordinance providing for such use of a city street, and then for the board of highway supervisors to examine and approve working plans that conform to the ordinance. Front street is near the Delaware river, and the sidings branch off from the main tracks and lead, not only to the wharfs, but also to the freight sheds and warehouses along either side of the street. The photographs in evidence as well as the testimony make it plain that the street is not of unusual width, and that the position of the tracks must have been influenced, if not determined, by considering the necessities and the convenience of vehicles and other traffic on a busy commercial highway.

The deceased was familiar with the situation, having worked regularly in the yard for about 2 months, and irregularly for some time before. On the night in question he undertook to get some drinking water from the tank of the locomotive for his own use, and incidentally for the use of the engineer. While doing this, he leaned out beyond the tender, and as he had chosen to draw the water while the engine was moving about 5 miles an hour, and moreover while it was moving around one of the curves where the clearance was least, his body came in contact with a car on the adjoining track, and received the injuries that caused his death. No question of contributory negligence is involved, but the nonsuit was properly entered if the evidence failed to prove the negligence of the company as charged in the foregoing quotation from the statement of claim.

In our opinion, the railroad company was not obliged in reason to anticipate his action at the place and under the circumstances in question, and therefore did not fail in its duty to provide the deceased with a reasonably safe place to work. The facts resemble so closely the situation in Railroad Co. v. Newell (C. C. A. 3d Cir.) 196 Fed. 866, 116 C. C. A. 428, that we need add little to the following extract from Judge Gray's opinion:

"Railroading is at best a somewhat dangerous employment, and requires and bespeaks reasonable prudence and care on the part of those employed in its conduct. Undoubtedly there are, in the general course of its business, specific places and situations in which employés are required to work, and there is a clear legal duty imposed upon the railroad company to keep these places safe for that purpose. The question, therefore, that arises in the case before us is, Was the space between the edge of the freight platform and the body of a freight car a place within which the plaintiff was required to work, and therefore to be kept reasonably safe for that purpose by the defendant? We think not. On the contrary, it was a place from which em-

ployés were excluded by the obvious situation. The freight platform was made for the convenience of loading goods onto cars and receiving goods from cars while standing on the siding. The platform, therefore, was a place upon which servants of the defendant were required to work, and which it was the duty of the defendant to make reasonably safe for that purpose. If such platform had been insecurely built, was not of sufficient width or dimensions to allow one to work thereon without danger, or, perchance, built so far from the siding as to allow one to slip between the platform and the cars, it might well be said that it was an unsafe place in which to work, for which the defendant would be liable. But it is not as to the platform as a place to work upon that the allegation of unsafety is made, but as to the space between the side of a freight car and the edge of a platform, in which no employé was required to work. Clearly the railroad company was not obliged, in considering the dimensions of that space, to provide for the safety of one who voluntarily placed himself therein.

"It was not only the right but the duty of the railroad company to provide freight stations and platforms for the convenient loading and unloading of cars. It concerns the public service with which a railroad company is charged. There is nothing to show that this platform, in its location or construction, was not built with due consideration and care, not only for the business to be accommodated, but, for the safety of those required to work upon it. Not only so, expert evidence was offered (and, as we think, mistakenly rejected by the court) to show that in the railroad business of the country there was a certain standardization as to the construction of such platforms in regard to their height and distance from the tracks, from which loading and unloading was to be conducted and to which the structure in question conformed. There is no evidence, however, to show that the plaintiff, or any other employé, was required to run along between these cars while they were moving, much less that he should do so while passing the freight platform in question, and incur the dangers of so doing. This platform was not a concealed object, or one difficult of observation, and the plaintiff unquestionably was familiar with its existence and location during the whole period of his long service. Not only was the space between the car and the platform obviously not a place in which the plaintiff or any other employé was required to work, in the manner in which he alleges he was working, or in any other manner, but there is no evidence that at any other time such work was required to be done in that space. There was nothing, therefore, in the situation which could suggest to the railroad company in constructing the platform in question, that it was encroaching upon or in any way affecting the safety of a place in which its workmen were expected to work. It provided a platform, the safety of which, as a place whereon its employés were required to work, it was its duty to protect. To hold that this space between the platform and the car was a place to which the obligation of the employer, to furnish a safe place in which to work, applied, would be to impose upon a railroad a liability of like kind as to every place or situation which could be called dangerous to those who placed themselves within its dangers, under circumstances however casual or unforeseen. Such places cannot be made safe as against accidental or unforeseen happenings. The operative requirements of a railroad prevent their being made so in the respect demanded by the plaintiff.

"Manifestly the numerous cases cited on behalf of the plaintiff, to show liability on the part of a railroad company, where structures of any kind are placed so near the tracks upon which trains are run as to endanger those operating said trains, have no application to the present case. The place where those operating the trains—the engineers, firemen, conductors and brakemen—are required to work is, of course, in and upon the train itself, and there can be no doubt as to the duty of their employer not to expose them unreasonably to dangers while operating the train on which they are employed."

We are unable to assent to the proposition that the railroad company was bound to foresee that one of its firemen might lean out in a

position of unusual danger while the engine was rounding a curve near which a car might temporarily be standing, and was therefore bound to construct its tracks in such a manner as to guard against an event so remote and so unlikely to occur. Moreover, the location of the tracks had the approval of the city, and while this may not be decisive it negatives at least the suggestion that their position was merely due to the railroad's own convenience.

The judgment is affirmed.