## PHILADELPHIA & R. RY. CO. v. BARTSCH.

(Circuit Court of Appeals, Third Circuit. December 29, 1925.)

No. 3320.

1. **Master and servant** ⟐⟐291(3)—**Court held required to submit issue of liability under Safety Appliance Act, under pleading and proof.**

Where plaintiff, whether intentionally or not, pleaded Safety Appliance Act (Comp. St. §§ 8605–8612), by pleading facts bringing case within it, and introduced evidence to sustain pleading, duty devolved on court to submit issue so raised.

2. **Master and servant** ⟐⟐111(1)—**Safety Appliance Act inapplicable to switching movement.**

Safety Appliance Act (Comp. St. §§ 8605–8612), relating to braking equipment on trains, does not apply to a switching movement.

3. **Master and servant** ⟐⟐286(13) — **Whether movement of cars was switching movement held for jury.**

Evidence in action for brakeman's death held for jury on question whether movement of loaded cars from one yard to another was movement of train or draft for switching purposes only as affecting applicability of Safety Appliance Act (Comp. St. §§ 8605–8612).

4. **Master and servant** ⟐⟐270(14)—**Admission in evidence of railroad's rules, without qualifying instruction, held error.**

In action for death of brakeman, who fell from car when it was stopped suddenly, company's rules, embodying requirements of Safety Appliance Act (Comp. St. §§ 8605–8612) relative to air brakes, were admissible; but court should have charged that such evidence had probative force only if movement was a train rather than a switching movement.

5. **Master and servant** ⟐⟐286(30)—**Negligence in making sudden stop, causing brakeman's fall, held for jury.**

In action under federal Employers' Liability Act (Comp. St. §§ 8657–8665) for death of brakeman, who fell from top of car when it was suddenly stopped, issue of negligence in making sudden stop held for jury.

6. **Master and servant** ⟐⟐89(1)—**Railroad owes no duty to protect employee in place where he is not required to be.**

Railroad employee, in place not necessary in discharge of his duties, is entitled to no protection from railroad, except that it should avoid injuring him after discovering his position.

**7. Witnesses ⬅═387—Permitting counsel to read, in form of questions, prior contradictory statement of witness, held error.**

It was error to permit counsel on cross-examination to read to witness paragraph by paragraph, in form of questions, alleged contradictory statement, thus getting before jury prejudicial matter, where witness denied the statement and nobody was called to verify it.

In Error to the District Court of the United States for the District of New Jersey; Joseph L. Bodine, Judge.

Action by Edna E. Bartsch, executrix of the last will and testament of John J. Bartsch, deceased, against the Philadelphia & Reading Railway Company. Judgment for plaintiff, and defendant brings error. Reversed, and new trial awarded.

Edward L. Katzenbach and Louis Rudner, both of Trenton, N. J., for plaintiff in error.

Ralph W. Botham, of New York City (Wilbur A. Heisley, of Newark, N. J., of counsel), for defendant in error.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

WOOLLEY, Circuit Judge. This suit was brought under the Federal Employers' Liability Act (35 Stat. 65; Comp. St. §§ 8657–8665), to recover damages for the loss sustained by the widow and children of John J. Bartsch arising from his death when in the employ of the Philadelphia & Reading Railway Company. The plaintiff had a verdict and the case is here on the defendant's writ of error. As the judgment must be reversed, we shall address our discussion to those matters in which error was involved at the first trial and which, inevitably, will arise and call for rulings by the court at the next trial.

The railroad yards at Reading, Pennsylvania, form a triangle. Olney Street Yard, Windsor Street and Fifth Street Yard are its points. Freight trains bound for the Fifth Street Yard pull out of the Olney Street Yard and proceed in a northerly direction to Windsor Street where there is a Hall signal—an overhead signal system. There they stop and await signals. On their next movement they draw forward a little and then back in a westerly direction on a crossover track to the Fifth Street Yard, thus traversing two sides and touching the three points of the triangle. The Olney Street and Fifth Street Yards are connected by a platform intersected by tracks. The distance from one yard to the other along the platform—the base of the triangle—is

between six and seven hundred feet. By walking over the platform a man may cross in about three minutes but the described train movement along the other two sides of the triangle takes about fifteen minutes.

On the day in question a draft of twenty-six loaded cars pulled out of the Olney Street Yard bound for the Fifth Street Yard, there to be broken up and classified. The draft was drawn by two engines: No. 1149 and No. 1458. It was in charge of the crew attached to the former; Bartsch was a brakeman of the crew attached to the latter. Though a member of this crew, his principal duty was at the Olney Street Yard and consisted in checking up the yard and reporting traffic room to the yardmaster. The draft stopped at the Hall signal. It then pulled ahead preliminary to its intended rearward movement on the crossover to the Fifth Street Yard. When it was in motion, Bartsch, with a bunch of train tickets in his hand, boarded the last car—a box car. He had climbed to the top and was in the act of assuming an erect position and walking along the center of the car when the train, on signal, came to a stop. Bartsch, losing his balance, fell and was killed.

The trouble in this case, we think, arose from the pleading, from a seeming change of position by the plaintiff at a critical stage of the trial, and, in consequence, from the very natural difficulty the learned trial court had in determining the true issues. The negligence charged against the defendant is twofold: First, a sudden stop which caused a violent jolt to the car on which Bartsch was standing; and second, the operation of the draft without the air-hose connecting with the brakes of its cars being coupled. On the second issue the plaintiff's case was tried and evidence admitted as though the negligence were a violation of the Safety Appliance Act (Comp. St. §§ 8605–8612). Near the close, however, counsel for the plaintiff stated, in reply to interrogation by the court, that the action was based not on the Safety Appliance Act but on the Federal Employers' Liability Act and that the charge of negligence as to the defendant's movement of cars with uncoupled air-hose was the "common law negligence" in that regard. In its charge the trial court did not instruct the jury on the negligence of moving the draft with air-hose uncoupled but limited its instructions to negligence in the "sudden stopping and jolting of the train" without reference to the cause.

[1] If the movement of the draft with air brakes uncontrolled was negligence at com-

mon law there was no evidence tending to prove it and the court was right in not submitting that issue to the jury. But if such a movement was negligence because a violation of the Safety Appliance Act, that issue should have been submitted with proper instructions. As we read the complaint, the plaintiff (whether intentionally or not) "pleaded" the statute, that is, without "citing" or "reciting" the statute, she stated facts which, if found by the jury, brought the case within it. Having thus pleaded the statute and introduced evidence to sustain the pleading, there devolved upon the court the duty to submit to the jury the issue of fact thus raised. That issue, obviously, was the character of the draft and of its movement.

[2] The Safety Appliance Act (27 Stat. 531) provides in regard to brakes that, "It shall be unlawful for any common carrier engaged in interstate commerce * * * to run any *train* * * * that has not a sufficient number of cars in it so equipped with power or train brakes that the engineer on the locomotive drawing such *train* can control its speed without requiring brakemen to use the common handbrake for that purpose." That this provision applies to the coupling of air-hose in the movement of a train and not in a switching movement is settled. United States v. Erie R. Co., 212 F. 853, 129 C. C. A. 307; 237 U. S. 402, 35 S. Ct. 621, 59 L. Ed. 1019; United States v. Northern Pac. R. R. Co., 254 U. S. 251, 41 S. Ct. 101, 65 L. Ed. 249. Whether, therefore, the movement of the draft in question with air-hoses uncoupled was a violation of the Act depended upon whether the draft was a train and whether, accordingly, the movement was a train movement or a switching movement. There was evidence that the cars were loaded at one yard and made up into a draft for movement to another yard in a group of yards; that the yard of origin and the yard of destination, though almost if not entirely contiguous, were separate yards; that the train was to be hauled from one to the other, which, as one witness described it, was a "dead haul"; that during the haul between yards nothing was to be done in a switching way and that on its arrival at the yard of destination it was to be broken up and its cars assigned to their proper trains.

[3] The evidence permitted conflicting inferences. There was enough evidence for the jury to determine as a fact either that the movement was of a train or of a draft for switching purposes. If a train move-

ment, a duty to couple the air-hose devolved on the defendant; if a switching movement, the defendant was charged with no such duty. On this law the jury should have been instructed that they should render a verdict for the plaintiff or defendant according as they should find one or the other of these facts; and if they should find it a train movement, then, of course, according as next they should find that the defendant's negligence in failing to couple the air-hose was or was not the proximate cause of the injury.

[4] On the submission of this issue with discriminating instructions on the law depends also the admissibility of two rules of the defendant company whose admission in evidence is assigned as error. Rule 1002 provides that:

"In freight *trains* 100% of the total number of cars must be equipped with air brakes and must be coupled and connected with the engine. All of the serviceable air brakes in the *train* must be in operation and no *trains* shall be run with less than 85% of the air brakes in effective operation."

Rule 1051 provides:

"When *making up* a train all hose connections must be coupled. * * * *"

These rules, being nothing more than the requirements of the Safety Appliance Act, were primarily admissible but their final applicability depended upon the finding of the jury as to whether the draft was a completed train or a train in process of being made up by the necessary shifting movements. We think the court fell into error not in admitting the rules but in submitting them, as part of the evidence, without instructing the jury as to when and upon what preceding finding of fact they had probative force.

[5] On the issue of negligence because of the alleged sudden and violent stopping of the train without warning there was some evidence on which a verdict for the plaintiff could be found and sustained. Where lay the weight of the evidence was not a matter for the trial court, nor is it now a matter for this appellate court, to determine. In this respect the defendant's motion for binding instructions was properly denied.

[6] Nor do we find error in the court's instruction on the rule of assumption of risk, insisted upon by the defendant. Yet, we think the charge should have been more explicit on the kindred subject of whether the decedent was upon the car in the performance of a duty, for unless he was there in the discharge of some duty required of him, the

railroad company, his master, owed him no duty except to avoid injuring him after it had discovered his perilous position. B. & O. R. Co. v. Newell, 196 F. 866, 116 C. C. A. 428; Hobbs v. Great Northern Ry. Co., 86 Wash. 678, 142 P. 20. The evidence on this point, though meager, was conflicting. One witness testified that Bartsch had no duty to perform on the draft; another, that he was a member of the crew attached to one of the engines which hauled the draft.

[7] Huber, a witness for the defendant, testified that in a stop such as that made by the train in question, there would be "a very slight bump" along the cars. On cross-examination counsel for the plaintiff held in his hand what purported to be a statement signed by the witness and asked him whether or not he had given it to one Wolburn. This the witness denied. Instead of showing the paper to the witness and asking him whether the signature it contained was his, and, in the event of denial, having the paper marked for identification and use in contradiction, counsel proceeded, over objection, to read to the witness the whole of the statement, paragraph by paragraph, in the form of questions. All of which the witness denied. The case ended without Wolburn being called to verify the writing and without Huber being otherwise contradicted. The substance of the statement, as indicated by the questions into which it was split up, was quite the opposite of the testimony the witness had given in his direct examination, and, therefore, it was very prejudicial to the defendant. By contradicting the witness in this fashion the plaintiff got into the record and before the jury matter which was not evidence at all. Its admission, we are constrained to find, was error.

The judgment is reversed and a venire facias de novo awarded.