**CAROLINA LIFE INS. CO. et al.**
v.
**WILLIAMS.**
No. 14414.

United States Court of Appeals
Fifth Circuit.
Feb. 23, 1954.

Rehearing Denied March 20, 1954.

Extraordinary Rehearing Denied
April 21, 1954.

478

Wm. F. Buchanan, Atlanta, Ga., Leonard Farkas, Albany, Ga., S. Augustus Black, Columbia, S. C., N. A. Turner, Columbia, S. C., Farkas, Landau & Davis, Albany, Ga., for appellants.

Robert Culpepper, Jr., Frank S. Twitty, Camilla, Ga., for appellee.

Before HUTCHESON, Chief Judge, and BORAH, and RUSSELL, Circuit Judges.

BORAH, Circuit Judge.

These are consolidated appeals from judgments of the United States District Court for the Middle District of Georgia, entered upon verdicts of a jury in favor of the plaintiff Margaret Shiver Williams and against the defendants Carolina Life Insurance Company, Colonial Life & Accident Insurance Company, and Life & Casualty Insurance Company of Tennessee.

Plaintiff filed separate actions in the District Court to recover on policies of insurance issued by defendants whereby each of the latter promised to pay to the former a stated sum for the loss of life of Theodore Williams, her husband, resulting from bodily injuries "effected solely through external, violent and accidental means" provided that disease or infirmity shall not contribute to the death of the insured.

The amended complaints alleged in identical language "That on the afternoon of November 17, 1951, deceased went out into a pasture to catch his horse, which was loose, which he had done many times before, taking with him several ears of corn, and after locating the horse, and mounting him, the horse made a quick jump, unexpectedly, and deceased was violently thrown to the ground causing a rupture of the aorta, about two inches from the aortic valve, causing a massive hemorrhage and immediate death, and which accident was unforeseen, unexpected, unusual and unintended, and at the time deceased was a healthy, able bodied man, and had not suffered from any disease of the heart, or elsewhere, which would have or did contribute to, or bring about such rupture of the aorta, the same having resulted solely and exclusively from having been unexpectedly and violently thrown by said animal." Defendants filed responsive pleadings and the actions were thereafter consolidated and a jury trial was had.

At the conclusion of the plaintiff's testimony, and again at the close of all the evidence, defendants moved the court to direct the jury to return a verdict in their favor on the ground that the plaintiff had failed to prove that the death of the insured resulted directly, independently and exclusively of all other causes from bodily injuries effected solely through external, violent and accidental means. The motions were denied and the court submitted the case to the jury which returned separate verdicts upon which judgments were entered in favor of plaintiff. Thereafter, defendants filed motions to set aside the verdicts and enter judgments in their favor in accordance with their prior motions, or in the alternative to grant a new trial. The principal grounds of said motions being that the verdicts were contrary to the law and without support in the evidence. The motions were overruled and these appeals followed and have been heard upon a single record.

The principal contentions of appellants are (1) that there is no evidence that the horse and the deceased while alive were together at any time and (2) that the testimony of appellee's witnesses equally supports each of two inconsistent theories that Williams met his death as the result of a voluntary exertion or strain and that it was due to an accident

and the jury was thus confronted with a mere choice of inconsistent propositions, neither of which was established by legitimate proof. Appellee on the other hand insists that there was evidence from which the jury could believe that Williams was on the horse; that the horse was frightened by a gunshot; that Williams was thrown from the horse; and that the fall was the cause of his death. In considering the evidence appellee insists that we must construe the evidence most favorably to the appellee and give her the full effect of every legitimate inference therefrom. This we shall do.

There is evidence that at about 3:00 P. M. on the fatal day Williams went into the pasture to catch the horse and bring it to a nearby barn for two children to ride. On that occasion he took with him several ears of corn and Price who was then hunting rabbits in the pasture saw Williams signalling and whistling for the horse but no one ever saw him catch the horse or attempt to mount the animal. A short time thereafter Price again observed Williams and at this time he was walking toward the highway, but Price did not see the horse. After an interval of about thirty minutes and when approximately four or five hundred feet from the point where the body of Williams was subsequently found Price fired one shot. Thereafter, Price returned to the area where he had first seen Williams at which time his attention was attracted to the two children who were then calling for Williams and at the same time he observed the horse grazing nearby and in proximity to the place where Williams' body was later to be found. Price walked up to where the children were and then undertook to run the horse up to the barn and into the lot. This he eventually did but it required thirty or forty minutes as the horse continued to run around in the immediate area. Thereafter and at or about 6:00 P. M. Mrs. Price went into the pasture to gather some firewood and there she discovered the body of Williams in a sandy area about fifty feet from the pasture edge near some high weeds and an oak tree.

When found, the deceased was lying on his back and the only external mark or wound on the body was a small and very superficial cut $\frac{1}{2}''$ long and $\frac{1}{8}''$ deep on the right cheek, and from which blood had flowed to the ground over his ear. There was dirt on his face, his cap was three to five feet from his body, two ears of corn were lying on the ground about four feet from his right side, and one ear was lying about a foot from his left hand. Some of the ears showed evidence of having been bitten off by the horse and some corn had been shelled from one of the ears. There was also evidence of horse tracks in the immediate vicinity. These tracks approached from the south, went right around the body where they were much more deeply impressed in the earth than elsewhere, and led away to the east. It further appears that on occasions Williams was seen to "jump on" the horse and ride bareback without a bridle; that the horse although small and gentle was gun shy and had evidenced that fact on a previous occasion by throwing a negro rider. Another circumstance that should be mentioned is that seven or eight weeks after the accident the clothing of deceased was examined and it is the testimony of deceased's widow and uncle that reddish brown horsehair matching the horse in color was discovered thereon. This clothing was not offered in evidence.

The medical testimony shows that the immediate and undisputed cause of death was a rupture of the aorta, the great trunk artery of the body which carries the blood away from the heart and feeds it to the body and to the brain. There was evidence adduced by appellee to show that the insured was not suffering from any pre-existing disease or infirmity which caused or contributed to the rupture and that the rupture could have been caused by a fall such as would result from being thrown from a horse violent-

ly "or otherwise." However, this evidence did not render less probable all inconsistent conclusions as appellee's expert also testified that a rupture might also be caused by some unusual activity, stress or strain as for examples where an individual steps off the curb and has a rupture because of the unusual stress and strain in trying to catch himself from falling; or is resisting injury or resisting anything that might cause discomfort to him or injury; or who suffers a rupture because of a strain in jumping on or over an object.[1] As to the last mentioned example or possibility appellants point to undisputed evidence which is to the effect that the usual and ordinary way to mount a horse bareback is to grasp with one hand the mane of the horse, put the other hand on its back, give a spring and jump up on the horse and land on your stomach and then twist around and sit up with legs astride the horse. Appellants vigorously insist that under all the evidence it is just as likely that the rupture of the aorta was caused by Williams throwing the weight of his 220 pound body against his abdomen in mounting the horse as that it was caused by a fall from the horse. And that since there was no witness to the occurrence and it might thus have happened in one of several ways the whole question is in the realm of conjecture, possibility or surmise.

In Pennsylvania R. Co. v. Chamberlain, 288 U.S. 333, 339, 53 S.Ct. 391, 77 L.Ed. 819, the Supreme Court held that circumstances equally consistent with several hypotheses prove neither; and that the party having the burden must fail. Here, the jury could not determine from the evidence how the decedent came to his death, excepting through mere guess and speculation. They might guess that he mounted the horse and then fell or was thrown therefrom because the horse acted in some unusual manner when the gun was fired, or that he sustained a ruptured aorta in mounting the horse. Among these theories, and there were others, there was no sufficient evidence upon which the jury could reach a definite conclusion concerning the cause of his death.

A verdict based upon mere speculation and theories not supported by the evidence cannot be allowed to stand. The Federal courts have so held in a number of cases. Galloway v. United States, 319 U.S. 372, 63 S.Ct. 1077, 87 L.Ed. 1458; Atchison, T. & S. F. R. Co. v. Toops, 281 U.S. 351, 50 S.Ct. 281, 74 L.Ed. 896; Fort Worth and Denver City Ry. Co. v. Smith, 5 Cir., 206 F.2d 667; Reading Co. v. Boyer, 3 Cir., 6 F. 2d 185; Philadelphia & R. R. Co. v. Bartsch, 3 Cir., 9 F.2d 858; Dobbyn v. Boat Repairing Corporation, 3 Cir., 25 F.2d 283; Szczepanski v. Pennsylvania R. Co., 3 Cir., 36 F.2d 1022. The law of Georgia is no different. Johnson v.

---

1. Appellee's expert pathologist testified: " * * * If a man were to jump on an object or over an object, as to whether that could be a strain, it would take quite an effort to jump over an object. And if he landed on it oblique, on his abdomen here, he would have tense muscles to keep his abdomen from caving in, and if he didn't succeed in landing, why, he might have a rupture. * * * "
  *     *     *     *     *
" * * * As to whether I said the rupture of the aorta could have been caused by some stress or strain put on the abdominal muscles, well, the abdominal muscle becoming rigid under the fear of injury, as in falling or any other process that might come about, you have that occurring. As to a yes or no answer whether that rupture could or could not have been caused by a strain or stress put on the abdominal muscles it would require a series of events taking place at the proper time, synchronously, and you would have that without any trouble. That is part of the mechanism. As to whether the rupturing of the aorta can be caused by pressure on the stomach muscles, sufficient pressure on the abdominal aorta, with synchronous or, you might say, at the same time a contraction of the heart itself, finds the abdominal aorta unable to yield and the heart pumps the blood forward, with the aorta unable to yield because of your muscular pressure here, something must yield and the aorta ruptures. * * * "

Aetna Life Insurance Company, 24 Ga. App. 431, 101 S.E. 134.

The judgments appealed from are Reversed.