# UNITED STATES *v.* NORTHERN PACIFIC RAIL-WAY COMPANY.

## CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE EIGHTH CIRCUIT.

No. 88.  Argued November 11, 12, 1920.—Decided December 6, 1920.

The requirement of the Safety Appliance Acts that all trains used on any railroad engaged in interstate commerce shall have a certain per cent. of their cars equipped with power or train brakes under control of the engineer, applies to "transfer trains" moving between two yards of a railroad company, over a "transfer" track which crosses at grade streets and lines of independent railroad companies where freight and passenger trains are run, and which also is used, in part, by independent railroad companies for their freight trains. P. 253.

A moving locomotive and cars attached are without the provision of the act only when they are not a train; as where the locomotive is

---

engaged in switching, classifying and assembling cars in a yard to make up a train. P. 254.

It is not the duty of courts applying the act to weigh dangers incident to particular railway operations. P. 255.

255 Fed. Rep. 655, reversed.

THE case is stated in the opinion.

*Mrs. Annette Abbott Adams,* Assistant Attorney General, with whom *The Solicitor General* was on the brief, for the United States.

*Mr. D. F. Lyons,* with whom *Mr. Charles W. Bunn* was on the brief, for respondent.

MR. JUSTICE BRANDEIS delivered the opinion of the court.

The Northern Pacific Railway Company owns and uses in interstate commerce a terminal railroad along the waterfront of Duluth extending from Rice's Point to Furnace, a distance of four miles. It was sued in the District Court of the United States for the District of Minnesota for violating the Safety Appliance Act [1] by operating over the whole of this road, in September, 1916, two transfer trains, without complying with the requirement that 85 per cent. of the train brakes be coupled so as to be under engine control. One train consisted of a locomotive and forty-eight cars, the other of a locomotive and forty cars. The company contended that the provision of the Safety Appliance Act did not control the operation because this terminal road was not part of a main line; that neither passenger nor freight trains, through or local, moved on it; that on it trains are not operated by time-tables, train

[1] Act of March 2, 1893, c. 196, § 1, 27 Stat. 531, as amended by Act of March 2, 1903, c. 976, § 2, 32 Stat. 943; and order of Interstate Commerce Commission dated June 6, 1910.

orders, or time-cards, nor is the use of the track controlled by block signals; that on it no train has right of way over another; but that there the single operating rule applies which requires all trains to move at such speed that they can be stopped at vision, and that trains are under the yardmaster's orders.   The company's contention was sustained by the District Court which directed a verdict for defendant; and the judgment entered thereon was affirmed by the Circuit Court of Appeals for the Eighth Circuit.   255 Fed. Rep. 655.   The case comes here on writ of certiorari.   249 U. S. 597.

These additional facts are material:   The road for a distance of a mile at the beginning and for less at the end is single track.   It crosses at grade two streets on one of which run street cars.   It crosses at grade, at five places in all, lines of three independent railroad companies which run freight trains to piers situated between Rice's Point and Furnace.   One of these companies also runs passenger trains across defendant's tracks.   In addition, two other independent companies use, under the usual traffic-right agreements, about a mile of this railroad as a part of their freight lines to piers situated between Rice's Point and Furnace.   These four miles of railroad owned by the Northern Pacific are not used by it for switching or assembling cars.   The switching, assembling and classification of cars for its through and local freight is done in the Rice's Point yard where there are fifty-five tracks, each four thousand feet long and at Furnace, where there are fifteen tracks, cars are also switched and assembled.   At Berwind and Boston, two intermediate points, where there are respectively nine and six tracks, cars are frequently set out or picked up by transfer trains.   The transfer trains here in question appear to have run solid between Rice's Point and Furnace.   Trains are run by the Northern Pacific on this line at a speed varying from three to eighteen miles an hour.

The company contends that the rule applied in *United States* v. *Erie R. R. Co.*, 237 U. S. 402; *United States* v. *Chicago, Burlington & Quincy R. R. Co.*, 237 U. S. 410, and *Louisville & Jeffersonville Bridge Co.* v. *United States*, 249 U. S. 534,[1] is not applicable, because here, unlike those cases, no part of the trains' journey was performed on a track used as part of the main line of the Northern Pacific system. If use of the road as part of a main line were essential in order that operations on it be controlled by the Safety Appliance Act, the requirement would be satisfied in this case by the fact that two independent companies use the road for freight trains under air control and that the passenger trains of another company cross it. "Not only were these [the defendant's] trains exposed to the hazards which that provision was intended to avoid or minimize, but unless their engineers were able readily and quickly to check or control their movements they were a serious menace to the safety of other trains which the statute was equally designed to protect." *United States* v. *Chicago Burlington & Quincy R. R. Co.*, *supra*. But there is nothing in the act which limits the application of the provision here in question to operations on main line tracks. The requirement that train brakes shall be coupled so as to be under engine control is in terms (32 Stat. 943) applicable to "all trains . . . used on any railroad engaged in interstate commerce." It is admitted that this railroad is engaged in interstate commerce; and the cases cited show that transfer trains, like those here involved, are "trains" within the meaning of the act. A moving locomotive with cars attached is without the provision of the act only when it is *not* a train; as where the operation is that of switching, classifying and assembling cars within railroad yards for the purpose of making

---

[1] That case was decided by this court, April 21, 1919. The decision of the Circuit Court of Appeals in the case at bar was rendered January 15, 1919.

up trains. Congress has not imposed upon courts applying the act any duty to weigh the dangers incident to particular operations; and we have no occasion to consider the special dangers incident to operating trains under the conditions here presented.

The judgment of the United States Circuit Court of Appeals is

*Reversed.*