<hr/>

### GREAT NORTHERN RY. CO. v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit.  March 28, 1923.)

No. 6180.

**Railroads ⬪229—Cars moved in terminal yards held a "train," within Safety Appliance Act, and not a "switching operation."**

Where a railroad company within its general terminal yards had a number of smaller yards or units, and in moving a bunch of cars from one yard to another used a portion of its main line, for a distance of about 4,800 feet, which movement was continuous, the cars so operated constituted a "train," within Safety Appliance Act (Comp. St. § 8605), and not a "switching operation" in a yard, and it was the duty of the company to equip the train with power brakes, as required by the order of the Interstate Commerce Commission.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Train.]

In Error to the District Court of the United States for the District of Minnesota; Wilbur F. Booth, Judge.

Proceeding by the United States against the Great Northern Railway Company for violation of the Safety Appliance Act. Judgment for the United States, and the defendant brings error. Affirmed.

J. H. Mulally, of St. Paul, Minn. (F. G. Dorety and A. L. Janes, both of St. Paul, Minn., on the brief), for plaintiff in error.

M. C. List, Sp. Asst. U. S. Atty., of Washington, D. C. (Lafayette French, Jr., U. S. Atty., of Austin, Minn., and Stacy H. Myers, Sp. Asst. U. S. Atty., of Washington, D. C., on the brief), for the United States.

Before STONE, LEWIS, and KENYON, Circuit Judges.

KENYON, Circuit Judge. This writ of error is to review the action of the United States District Court for the District of Minnesota, Fourth Division, in entering judgment against the Great Northern Railway Company and in favor of defendant in error for alleged violation by the Great Northern Railway Company of the act of Congress known as the Safety Appliance Act (Comp. St. § 8605 et seq.). At the conclusion of the evidence, both sides moved for a directed verdict; the court sustaining the motion in favor of plaintiff there, defendant in error here.

This being the situation, the only questions are:  (1) Was there substantial evidence to support the finding?  And (2) did the court make proper application of legal principles?  Chicago, Burlington & Quincy

Ry. Co. v. U. S., 170 Fed. 556, 95 C. C. A. 642 (8th C. C. A); Southern Pac. Co. v. U. S., 222 Fed. 46, 137 C. C. A. 584 (9th C. C. A); Beuttell v. Magone, 157 U. S. 154, 15 Sup. Ct. 566, 39 L. Ed. 654; Empire State Cattle Co. v. Atchison, Topeka & Santa Fé Ry. Co., 210 U. S. 1, 28 Sup. Ct. 607, 52 L. Ed. 931, 15 Ann. Cas. 70.

Within the general terminal yards of plaintiff in error at Minneapolis there are a number of apparently smaller yards or units designated as "P" yard, "O" yard, "M" yard, "N" yard, and others. According to the testimony of the train master of the Terminals Division, St. Paul to Hutchinson, each of these yards is a separate unit. The 24 cars here involved had been bunched on track No. 6 in the "P" yard. They were pushed by an engine from this point to a point west of Lyndale avenue bridge known as the "Hay" yard north of the main tracks. To reach this place they moved east from the "P" yard, crossed the east line main track to the west line main track, and proceeded east on this track to the lead at the "Hay" yard, where the cars were distributed to certain industries and delivery tracks. The distance moved was about 4,800 feet and the movement was continuous from the "P" yard to the "Hay" yard. It was not a mere switching operation, but was a transfer movement of the 24 cars from one distinct entity, known as "P" yard, to another entity, known as the "Hay" yard.

The switching, as distinguished from train movement, was after the cars had reached the "Hay" yard, or lead track there. In moving the cars down the main track they were exposed to hazards themselves, and exposed other trains operating on the main line to hazards which made essential the appliances for quickly stopping, and such is the very purpose of the act. The mere fact that the railroad company designates a large stretch or tract as yard does not make every operation therein a switching operation. If so, the act could be avoided by including large areas in the term yard. These cars, so operated, constituted a train within the purview of section 8605, U. S. Compiled Statutes, and under the order of the Interstate Commerce Commission made in pursuance of the statutes 85 per cent. of such train must be so equipped with power or train brakes that the engineer can control the speed without requiring brakemen to use the common hand brake. This train was not so equipped, and the case falls within the doctrines announced in U. S. v. Erie R. Co., 237 U. S. 402, 35 Sup. Ct. 621, 59 L. Ed. 1019; U. S. v. C., B. & Q. R. Co., 237 U. S. 410, 35 Sup. Ct. 634, 59 L. Ed. 1023; U. S. v. Northern Pac. Ry. Co., 254 U. S. 251, 41 Sup. Ct. 101, 65 L. Ed. 249; Louisville & Jeffersonville Bridge Co. v. U. S., 249 U. S. 534, 39 Sup. Ct. 355, 63 L. Ed. 757; U. S. v. Galveston, H. & H. R. Co., 255 Fed. 755, 167 C. C. A. 101.

The findings of the District Court are supported by substantial evidence, and the application of the law was correct.

Judgment is affirmed.