UNITED STATES v. GULF, C. & S. F. RY. CO.

(District Court, W. D. Louisiana, Lake Charles Division. March 14, 1925.)

No. 1466.

1. Commerce ⬦27(3)—Log train, not owned by interstate railroad, transported on its tracks in intrastate commerce, held within Safety Appliance Act.

Logging cars, not belonging to interstate railroad, but transported over its tracks, wholly within state under control of railroad's train dispatcher, was within Safety Appliance Act March 2, 1893, as amended by act April 1, 1896, and' Act March 2, 1903 (Comp. St. §§ 8613–8615), which applies to all equipment moving on line of interstate railroad, regardless of nature of shipment.

2. Railroads ⬦229 — Safety Appliance Act mandatory.

Safety Appliance Act March 2, 1893, 27 Stat. 531, as amended by Act April 1, 1896, and Act March 2, 1903 (Comp. St. §§ 8613–8615), is mandatory, and court must apply its penalties, when violation is shown.

At Law. Action by the United States against the Gulf, Colorado & Sante Fé Railway Company to recover penalties for violation of Safety Appliance Act. Judgment for the United States.

Philip H. Mecom, U. S. Atty., of Shreveport, La.

Pujo & Bell, of Lake Charles, La., for defendant.

DAWKINS, District Judge. [1] This is an action by the government on 12 counts to recover of the defendant the sum of $100 in each instance for the violation of the Safety Appliance Act of March 2, 1893 (27 Stat. 531 [Comp. St. §§ 8605–8612]), as amended by Act approved April 1, 1896 (29 Stat. 85 [Comp. St. § 8610]), and as further amended by the Act of March 2, 1903 (32 Stat. 943 [Comp. St. §§ 8613–8615]). The jury has been waived and the case sub-

mitted upon an agreed statement of facts. The sole question, therefore, is one of law, and that is: Does the statute apply where the equipment moves entirely in intrastate commerce?

The defects in the locomotive and cars are admitted. The train in question belonged to Hillyer-Deutsch-Edwards, Inc., and was being used by it in transporting logs from the forest to its sawmill between Oakdale and Broad, La., a distance of about two miles, wholly within the state, and under a contract with the defendant company permitting the use of its line. The log train was controlled and directed by the defendant's train dispatcher, just as all other trains were handled. Defendant's road extends from the state of Louisiana into the state of Texas, and is used in transporting both interstate and intrastate commerce. It is contended by defendant that, because neither the said cars nor the locomotive were engaged in or ever hauled interstate commerce, the Safety Appliance Act could not apply. On the other hand, it is the position of the government that the statute in question, by the amendment of 1903, was enlarged so as to embrace any and all cars, locomotives, or other equipment used upon an interstate railroad, whether such equipment was being used at the time in such commerce or not.

The identical question appears to have had consideration at the hands of the Supreme Court of the United States as far back as 1911, in the case of Southern Railway Co. v. United States, 222 U. S. 20, 32 S. Ct. 2, 56 L. Ed. 72. The facts and contentions made in that case were briefly stated by Mr. Justice Van Devanter, as the organ of the court, as follows:

"Briefly stated, the case is this: The defendant, while operating a railroad which was 'a part of a through highway' over which traffic was continually being moved from one state to another, hauled over a part of its railroad, during the month of February, 1907, five cars, the couplers upon which were defective and inoperative. Two of the cars were used at the time in moving interstate traffic and the other three in moving intrastate traffic; but it does not appear that the use of the three was in connection with any car or cars used in interstate commerce. The defendant particularly objected to the assessment of any penalty for the hauling of the three cars, and insisted, first, that such a hauling in intrastate commerce, although upon a railroad over which traffic was continually being moved from one state to another, was not within the prohibition of the Safety Appliance Acts of Congress; and, second, that, if it was, those acts should be pronounced invalid as being in excess of the power of Congress under the commerce clause of the Constitution. But the objection was overruled (164 F. 347), and error is assigned upon that ruling."

Throughout the opinion the court treated the three cars which hauled intrastate traffic as having been handled independent of interstate commerce, and not as forming part of a train in which cars moving between the states was included, and in discussing the scope of the Safety Appliance Law, as enlarged by the amendment, had this to say:

"The original Act of March 2, 1893, 27 Stat. 531, c. 196, imposed upon every common carrier 'engaged in interstate commerce by railroad' the duty of equipping all trains, locomotives and cars, used on its line of railroad in moving interstate traffic, with designated appliances calculated to promote the safety of that traffic and of the employés engaged in its movement; and the second section of that act made it unlawful for 'any such common carrier' to haul or permit to be hauled or used on its line of railroad any car, 'used in moving interstate traffic,' not equipped with automatic couplers capable of being coupled and uncoupled without the necessity of a man going between the ends of the cars. The Act of March 2, 1903, 32 Stat. 943, c. 976, amended the earlier one and enlarged its scope by declaring, inter alia, that its provisions and requirements should 'apply to all trains, locomotives, tenders, cars, and similar vehicles used on any railroad engaged in interstate commerce, and in the territories and the District of Columbia, and to all other locomotives, tenders, cars, and similar vehicles used in connection therewith.' Both acts contained some minor exceptions, but they have no bearing here.

"The real controversy is over the true significance of the words 'on any railroad engaged' in the first clause of the amendatory provision. But for them the true test of the application of that clause to a locomotive car or similar vehicle would be, as it was under the original act, the use of the vehicle in moving interstate traffic. On the other hand, when they are given their natural signification, as presumptively they should be, the scope of the clause is such that the true test of its application is the use of the vehicle on a railroad which is a highway of interstate commerce, and not its use in moving interstate traffic. And so certain is this that we think there would be no contention to the contrary, were it not

for the presence in the amendatory provision of the third clause, 'and to all other locomotives, tenders, cars, and similar vehicles used in connection therewith.' In this there is a suggestion that what precedes does not cover the entire field, but at most it is only a suggestion, and gives no warrant for disregarding the plain words, 'on any railroad engaged,' in the first clause.

"True, if they were rejected, the two clauses, in the instance of a train composed of many cars, some moving interstate traffic and others moving intrastate traffic, would by their concurrent operation bring the entire train within the statute. But it is not necessary to reject them to accomplish this result, for the first clause, with those words in it, does even more, that is to say, it embraces every train on a railroad which is a highway of interstate commerce without regard to the class of traffic which the cars are moving. The two clauses are in no wise antagonistic, but, at most only redundant, and we perceive no reason for believing that Congress intended that less than full effect should be given to the more comprehensive one, but, on the contrary, good reason for believing otherwise. As between the two opposing views, one rejecting the words 'on any railroad engaged' in the first clause and the other treating the third clause as redundant, the latter is to be preferred, first, because it is in accord with the manifest purpose, shown throughout the amendatory act, to enlarge the scope of the earlier one and to make it more effective, and, second, because the words which it would be necessary to reject to give effect to the other view were not originally in the amendatory act, but were inserted in it by way of amendment while it was in process of adoption (Cong. Rec. 57th Cong. 1st Sess. vol. 35, pt. 7, p. 7300; Id. 2d Sess. vol. 36, pt. 3, p. 2268), thus making it certain that without them the act would not express the will of Congress.

"For these reasons it must be held that the original act as enlarged by the amendatory one is intended to embrace all locomotives, cars, and similar vehicles used on any railroad which is a highway of interstate commerce."

This pronouncement appears to me to be conclusive of the idea that the statute does apply to all equipment moving upon the line of an interstate railroad, regardless of the nature of the shipment or whether conveying freight or not.

In the same opinion the Supreme Court also met the argument made in this case as to the power of Congress under the commerce clause of the Constitution to make applicable the law in question to equipment used entirely in intrastate commerce and gave very cogent reasons for sustaining that authority. It pointed out that, in prescribing a standard of safety for all trains upon an interstate highway, Congress was acting in the interest both of passengers and employees traveling upon interstate trains; that the inefficient working of appliances upon equipment used on such highways, though bearing exclusively intrastate traffic, might and probably would block the line and endanger the life and limb of those traveling upon interstate trains, and in this way the regulation bore directly upon the subject matter of which the Constitution gives the national law-making body exclusive jurisdiction, to wit, commerce between the states. See, also, United States v. Northern Pacific Railway Co., 254 U. S. 251, 41 S. Ct. 101, 65 L. Ed. 249.

It can make no difference that the equipment involved in this case was the property of another corporation and the defendant had no interest therein other than to direct or control its movements upon its line, for section 6 of the Act of March 2, 1893 (Comp. St. § 8610), as amended by the acts of 1896 and 1903, imposes the penalty upon those carriers who use or permit to be used any such defective locomotive or cars upon their tracks. United States v. Northwestern Pacific Railway Co. (D. C.) 235 F. 965.

[2] The terms of the law appear to be mandatory and when a violation is shown, the court has no alternative but to apply its penalties. St. Louis, Iron Mountain & Southern Railway Co. v. Taylor, Administrator, 210 U. S. 281, 28 S. Ct. 616, 52 L. Ed. 1061; Chicago, Burlington & Quincy Railway Co. v. United States, 220 U. S. 559, 31 S. Ct. 612, 55 L. Ed. 582. See, also, C. & O. Ry. Co. v. United States, 226 F. 683, 141 C. C. A. 439; C., B. & Q. Railway Co. v. United States, 211 F. 12, 127 C. C. A. 438; and United States v. T. & B. V. Railway Co., 211 F. 448, 128 C. C A. 120.

My conclusion is that the government is entitled to recover upon all counts of its petition.