**ILLINOIS CENT. R. CO. v. UNITED STATES.***

(Circuit Court of Appeals, Eighth Circuit. September 17, 1926.)

No. 7318.

Railroads ⬟⟹229—Continuous movement of cars from one part of yard to another held "train movement," requiring power brakes, and not "switching operation" (Comp. St. §§ 8605, 8614).

Continuous movement of freight cars, reassembled after switching, from one portion of

*Rehearing denied November 15, 1926.

railroad yard to another 4,500 feet away, through business or warehouse part of city, and crossing several city streets at grade, *held* "train movement," within Safety Appliance Act (Comp. St. §§ 8605, 8614), and not "switching operation," and train should have been operated with power brakes, as ordered by Interstate Commerce Commission.

In Error to the District Court of the United States for the District of Nebraska; Joseph W. Woodrough, Judge.

Action by the United States against the Illinois Central Railroad Company. Judgment for the United States, and defendant brings error. Affirmed.

C. A. Helsell, of Ft. Dodge, Iowa (Helsell & Helsell, of Ft. Dodge, Iowa, William Baird & Sons, of Omaha, Neb., and W. S. Horton and E. C. Craig, both of Chicago, Ill., on the brief), for plaintiff in error.

James O. Tolbert, Sp. Asst. U. S. Atty., of Washington, D. C. (James C. Kinsler, U. S. Atty., and George A. Keyser, Asst. U. S. Atty., both of Omaha, Neb., on the brief), for the United States.

Before STONE and LEWIS, Circuit Judges, and SYMES, District Judge.

SYMES, District Judge. The Safety Appliance Act (Comp. St. §§ 8605, 8614) makes it unlawful for a common carrier engaged in interstate commerce to run any train in such traffic without a sufficient number of the cars thereof being equipped with train brakes, so that the speed can be controlled without the use of hand brakes. An order of the Interstate Commerce Commission, made pursuant to authority vested in it by the same act, requires that 85 per cent. of the cars in any such train shall have their brakes used and operated by the engineer of the train.

This suit was brought by the government against the defendant railroad for operating on September 21, 1925, an engine and 25 freight cars in its Grace street yard, Omaha, in violation of the above statute and rule. A jury was waived, and the case submitted to the court on an agreed statement.

It appears that the railroad company started a drag or movement of 25 freight cars from its Council Bluffs yard, across the Missouri river, to its Grace street yard, a distance of 5 miles. This part of the movement was admittedly covered by the statute, which was complied with. Upon arrival at the Grace street yard, the waybills for the cars were delivered to the yard clerk by the engine foreman, in exchange

for a switching list showing the locations or tracks where the various cars were to be spotted. The air was disconnected from the cars, and so remained during the balance of the operations that followed. The engine was uncoupled, went around to the other end of the train, picked out 7 cars from various parts thereof, and switched them onto one of the defendant's tracks called the "U. P. lead." The engine, from the rear, then assembled the remaining 18 cars and pushed them in a southerly direction along one of defendant's tracks, known as the "lead" track, for a distance of approximately 4,500 feet, to another set of switching tracks, and set out 10 of the cars on "auto dock track No. 1," 4 cars on the next track, and the balance on various tracks near by.

According to the stipulation, this entire movement, after the arrival at the Grace street yard, was within what the railroad company designates and operates as one yard. An examination of the plat attached to its brief shows that that part of the yard where the 7 cars were cut out and left on the "U. P. lead," consists of 17 or 18 parallel tracks; that thereafter the engine and remaining cars moved through a part of the yard consisting of a single track only, for the distance of 4,500 feet, until it reached the other end of the yard, where there are another set of parallel tracks. This movement was through the business or warehouse part of the city. The engine and cars moved as a unit, no cars being switched out or picked up en route.

The plat shows that this particular track intersects at grade Nicholas and Fourteenth streets, much used by trucks and other traffic; that Webster and Cass streets, used by employees of the Union Pacific Railroad going to and from the railroad shops, were crossed at grade, as well as some switch tracks of the Chicago & St. Paul Railroad at Fourteenth street, and the Missouri Pacific tracks at California street; also that a portion of this track between Webster and California streets was jointly used by defendant and the former road.

Plaintiff in error contends that the operation complained of was nothing more than a movement of a few cars from one point to another in the same yard by an engine foreman and yard crew, and the placing of the cars on various industrial tracks; that this made it a purely switching, as distinguished from a train operation, and, as

shown by the stipulation, any train movement had been completed on the arrival at the Grace street yard; that the train was simply being broken up, and no main track, over which regular or scheduled passenger or freight trains as such were operated, was used.

Counsel for the railroad company at the same time admit that cars assembled together as a transfer train, moving from one yard to another, even when handled by switching crews, are trains within the meaning of the act. The train in question did not run on schedule time, had no train orders, displayed no markers, was handled by a switching crew, was not under the control of train dispatchers, and was operated by vision.

The government contends that, after the first 7 cars were taken out, there was a re-assembling of the remaining 18 cars into another train, that then moved intact 4,500 feet to another division of the same yard over a single track; that this was a train movement, as distinguished from a switching one, and was followed by a second switching operation, distinct from the first.

The question presented on this review has frequently been before the Supreme Court, and various appellate courts. The decisions turn upon the particular facts of each case. All of them contain many varying and conflicting factors, no one of which alone is controlling. One of the earlier cases is U. S. v. Erie R. Co., 237 U. S. 402, 35 S. Ct. 621, 59 L. Ed. 1019, where it was held that "a train," within the meaning of the statute, consists of an engine and cars assembled and coupled together for a run or trip, as distinguished from a situation where the cars are simply being assembled and coupled into outgoing trains, or incoming trains are being broken up.

In Louisville & Jeffersonville Bridge Co. v. U. S., 249 U. S. 534, 39 S. Ct. 355, 63 L. Ed. 757, it was held that the transferring of an engine and 26 cars assembled and coupled together, moving from one terminal to that of another road, a distance of three-quarters of a mile, without uncoupling or switching out any car, was a train movement. The opinion emphasizes the importance of the fact that the movement involved the crossing at grade of city streets, where control of the cars by train brakes was very necessary to secure the safety of employees and the public, and that the use or nonuse of air brakes might well

mean the difference between safety and serious accident.

In U. S. v. Northern Pacific R. Co., 254 U. S. 251, 41 S. Ct. 101, 65 L. Ed. 249, the railroad company argued that the act did not apply, because the movement in question was not over a main line track used by regular trains, and was not controlled by timetables, etc. The Supreme Court held, however, that such a train was subject to the hazards which the act was intended to avoid, unless the engineer had full control of the train by means of air brakes, and it found nothing in the act limiting its application necessarily to operations on main line tracks.

The nearest case to ours on the facts is Great Northern v. U. S., 288 F. 190, a decision by this court. It holds that the mere fact that the railroad company designates a large stretch of track as a yard does not necessarily make every operation therein a switching operation.

Applying these authorities to the case at bar, we are persuaded that this movement was essentially a train movement. The first switching operation had been completed. The remaining cars were reassembled and passed as a unit along a single track for a considerable distance. No switching operations were undertaken until another set of switching tracks was reached. The streets of a busy city and tracks of other railroads were crossed at grade, and there was ever present the probability that the train might, at any time, have to be stopped suddenly to avoid an accident. This could not be done without the use of train brakes. There was a serious danger, not only to the crew of this particular train, but to the public and other trains and employees as well, which it was the object of the law to minimize as far as possible.

The fact that the whole operation was within what the railroad chose to call and operate as one yard is not controlling. As we have already shown, this so-called Grace street yard was divided into two sets of switching tracks, a considerable distance apart, and connected by a single lead track, from which the public was not excluded. This part of the yard, at least, was used by other railroads, and was not the private property of the plaintiff in error.

These, in our opinion, are the controlling factors that bring this particular case within the purview of the statute.

The judgment of the lower court should be affirmed; and it is so ordered.