### CHICAGO, ST. P., M. & O. RY. CO. v. UNITED STATES.

Circuit Court of Appeals, Eighth Circuit. December 13, 1929.

No. 8486.

Wymer Dressler, of Omaha, Neb. (Robert D. Neely, of Omaha, Neb., on the brief), for appellant.

Monroe C. List, Sp. Asst. to U. S. Atty., of Washington, D. C. (James C. Kinsler, U. S. Atty., and George A. Keyser, Asst. U. S. Atty., both of Omaha, Neb., on the brief with him), for appellee.

Before KENYON and VAN VALKENBURGH, Circuit Judges, and MARTINEAU, District Judge.

MARTINEAU, District Judge. The Chicago, St. Paul, Minneapolis & Omaha Railway Company, hereinafter called the railroad, was sued by the United States to recover a penalty for violating the Safety Appliance Act (45 USCA § 1 et seq.) and an order of the Interstate Commerce Commission, by operating in September, 1925, a train without complying with the requirement that 85 per cent. of the train brakes be coupled so as to be under engine control.

The essential facts are not in dispute, but the railroad seriously contends that these facts do not constitute a violation of law. Sixteen cars were assembled on what is known as the Burlington exchange track, located in what the railroad terms the south part of its yards in Omaha. These 16 cars were moved, as a unit, by a locomotive of the railroad commonly used for switching purposes north for 1¼ miles to where the railroad's freight trains were commonly made up. During this movement no cars were picked up or set out, no switching was done, and one stop was made at a railroad crossing. Four city streets used by the public were crossed, and two tracks of other railroads, not used for main line traffic, were crossed. The track over which the movement was made was a lead from the interchange track, on which the cars were assembled, to the north yard. None of the cars had their brakes so connected as to be operated as required by the Safety Appliance Act. 45 USCA § 1 et seq. The District Court sustained the contention of the government, and the railroad is here asking for a reversal of that judgment.

■ The railroad first insists that the Safety Appliance Act and the order of the Interstate Commerce Commission are void for un-

certainty. This law has been construed many times by this court, as well as the Supreme Court of the United States, and, while this specific question has not been directly passed upon, in many of the cases the point decided was the one involved. here. Many penalties have been upheld, and in no case do we find an intimation that the law itself is void for uncertainty. This, we think, makes it unnecessary to further discuss this point.

The question, then, to be decided here is: Did the movement of the 16 cars, in the manner herein indicated, constitute a switching movement or a train? The same contentions made here by the railroad were made in Louisville & Jeffersonville Bridge Co. v. United States, 249 U. S. 534, 39 S. Ct. 355, 356, 63 L. Ed. 757. The language used there is decisive and clearly defines the principles to be applied in determining whether the operation of a train involves a switching or train movement. The language of the court there applies with peculiar force to the facts in this case, because they are very similar. The court said:

"The work done with the cars, as described, was not a sorting, or selecting, or classifying of them, involving coupling and uncoupling and the movement of one or a few at a time for short distances, but was a transfer of the 26 cars as a unit from one terminal into that of another company for delivery, without uncoupling or switching out a single car, and it cannot therefore with propriety be called a switching movement. The movement of this train of cars, 1,100 feet in length, was for a distance of over three-quarters of a mile, and involved crossing, at grade, three city streets once, two streets twice, one street three times, and a main track movement of at least 2,600 feet, with two stops and startings on the main track. This is not only a train movement, but it would be difficult to imagine one in which the control of the cars by train brakes would be more necessary, in order to secure that safety of employees, of passengers and of the public which it is the purpose of the act to secure, by requiring that engineers shall be given control sufficient to stop any train they may be moving, promptly on the first signal or sight of danger."

The contention that the movement must be upon the main tracks was disposed of in United States v. Northern Pacific Railway Co., 254 U. S. 251, 41 S. Ct. 101, 65 L. Ed. 249, and by this court in Illinois Central Railway Co. v. United States, 14 F.(2d) 747. To hold that the facts in this case do not constitute a violation of law would necessitate the overruling of the latter case, because the facts in the two cases are as nearly identical as they could be in cases arising out of different transactions.

The fact that additional time and expense are required by the railroad to comply with the Safety Appliance Act (45 USCA § 1 et seq.) does not constitute a reason for permitting its violation. All safety appliance equipment almost necessarily demands additional expenditures. Besides, these are questions that address themselves to Congress, and not to the courts.

The judgment of the court below will be affirmed.