## UNITED STATES v. NORTHERN PAC. RY. CO.

### No. 6486.

Circuit Court of Appeals, Ninth Circuit.

Dec. 18, 1931.

Anthony Savage, U. S. Atty., of Seattle, Wash., and John T. McCutcheon, Asst. U. S. Atty., of Tacoma, Wash., and M. C. List, Sp. Asst. to U. S. Atty., of Washington, D. C.

L. B. daPonte, of Seattle, Wash., and Thos. H. Maguire, of Portland, Or., and J. W. Quick, of Tacoma, Wash., for appellee.

Before WILBUR and SAWTELLE, Circuit Judges, and JAMES, District Judge.

JAMES, District Judge.

Suit was brought against appellee railroad company to recover penalties affixed by statute for the alleged violation of the Safety Appliance Act. It was charged that in two instances appellee had operated trains without power brakes on the cars thereof. 45 USCA § 9. Under the provisions of the section referred to, and orders of the Interstate Commerce Commission made pursuant to authority therein given, not less than 85 per cent. of cars composing any train must be equipped with power brakes capable of being operated by the engineer of the locomotive drawing the train.

Under facts which were stipulated at the hearing in the District Court, judgment was given in favor of the appellee.

The question presented is as to whether the movements of the locomotive and cars concerned was a switching operation purely, within the yard limits of appellee's railroad. The place where the alleged violation occurred was at the city of Aberdeen, Wash. At that place the railroad company has a depot, immediately adjoining which are several side tracks which extend a distance of at least three of the city's blocks. These side tracks enter the main line at points easterly of the depot and westerly of the depot. The point of convergence easterly is at a distance of approximately 900 feet. From that point the main line proceeds northeasterly across the Wishkah river. The alleged violation described in the first count of the complaint occurred as follows: A switch engine was coupled head on to a string of five cars, which had been left standing on the side tracks in the vicinity of the depot, and

pushed these cars out easterly onto the main line track. It proceeded along the main line track for a distance of somewhat over one-half mile. There it shunted four of the cars onto a switch or spur at what was called Wilson's Mill. The engine backed out with one car, and proceeded a distance of a few hundred feet to another siding, which it backed into with the single car to allow a regular train to pass on the main line. It then proceeded with the one car southeasterly along the main track for a distance of slightly over one mile, where it set out on a spur the single car, and took two loaded oil cars for a return trip. It stopped at the Wilson spur, and there switched the four cars previously left by it to spurs at as many different industrial establishments in the immediate neighborhood of the Wilson spur. It then returned to the depot yards along the main line track with the two loaded oil cars.

The outgoing and return movements, ending at the depot yards, are the subject of the first count. Similar movements on the day following are made the subject of the second count. During the movements described, none of the brakes on the cars were connected with power under the control of the engineer.

The track over which the movements were executed crossed several city streets used by pedestrians and vehicles. For at least one-third of a mile, the main line used ran through the center of Wishkah street, which was the main highway for automobile traffic between Tacoma and Hoquiam.

We are of the opinion that the movements complained of were train movements and subject to the requirements of the Safety Appliance Act. They were in no sense switching movements within the railroad yards where trains were assembled or broken up. As was said by Justice Brandeis, in United States v. Northern Pacific Ry. Co., 254 U. S. 251, 41 S. Ct. 101, 102, 65 L. Ed. 249: "A moving locomotive with cars attached is without the provision of the act only when it is not a train; as where the operation is that of switching, classifying and assembling cars within railroad yards for the purpose of making up trains."

In the transfer of cars from railroad yards to nearby points, or to other yards of a railroad company, where the main line is traversed for substantial distances, the railroad company is not authorized to claim that the movement is merely one of switching which will fall without the provisions of the act. United States v. Erie Railroad Company, 237 U. S. 402, 35 S. Ct. 621, 59 L. Ed. 1019; Great Northern Railway Co. v. United States, 297 F. 692 (C. C. A. 9). The authorities cited, we think, fully sustain the conclusion before stated. It is proper to state, if what has been said in this opinion is not already clear to the point, that we do not intend to hold that during the actual switching operations, at either of the places where cars were left or picked up, power brakes were required to be connected between the engine and cars; nor that the use of the main line for switching, or assembling trains, within the railroad yards, would bring such movements within the statute provisions.

The judgment is reversed.