## UNITED STATES v. SOUTHERN PAC. CO.
### No. 6771.

Circuit Court of Appeals, Ninth Circuit.
Aug. 29, 1932.

Geo. J. Hatfield, U. S. Atty., and L. E. Kilkenny, Asst. U. S. Atty., both of San Francisco, Cal., and James O. Tolbert, Sp. Asst. to U. S. Atty., of Washington, D. C.

Henley C. Booth and Augustus G. Goodrich, both of San Francisco, Cal., for appellee.

Before WILBUR and SAWTELLE, Circuit Judges, and JAMES, District Judge.

JAMES, District Judge.

This action was brought to recover penalties for violations of the Federal Safety Appliance Acts (45 USCA §§ 1–10). There were five counts in the complaint, each charging that the defendant railroad company had moved a train without making the use of power brakes capable of being operated by the engineer of the locomotive attached thereto. The District Court held that the several movements constituted switching operations within the terminal yards of the defendant; hence there was no violation of the act. The United States has appealed from the judgment.

The several alleged train movements were to and from the same points but on different dates. On the first date, ten cars with a locomotive attached moved; on the second date,

twenty-six cars; on the third date, twenty cars; on the fourth date, eight cars; on the fifth date, thirteen cars. During none of the movements were air brakes coupled for use.

In the city of San Francisco the defendant railroad company maintains extensive terminal yards used in connection with both its freight and passenger service. One section of the yards may be described generally as being included within the area lying between Third and Seventh streets and Berry and Townsend streets. A second yard section is southeasterly (called Mission Bay) and is reached by means of a so-called "drag" track, the total length of which is approximately one mile. The "drag" track is no part of the main line. The "drag" in its use is limited to the handling of cars between the two yard sections, and to serve also a number of sidings at industrial establishments along its course. Eight city streets are crossed at grade. Watchmen are kept at certain of the intersections during the daytime. The railroad company, for operative purposes, considers the two sections as parts of one general yard. For segregation, classification, and distribution, it is constantly necessary that cars brought into the Townsend street area be shifted to Mission Bay yard, and vice versa. The movements charged in this action were of that kind. The cars were coupled together in train form and pushed or pulled by a switch engine along the "drag" track. No separation of the cars was made at any point between the two yard sections. It was not the purpose that there should be.

 If movements made in the manner described can be classed as "switching" operations, then the judgment appealed from should not be disturbed. This conclusion involves the inquiry whether, under the conditions described, the separate sections or units of the terminal switching area should be deemed to be one yard and the "drag" track a switching facility incorporated therein. A designation of the yard limits made by a railroad company, standing alone, can have no effective force in the argument. If yard units a mile apart can be designated as comprising a single terminal yard, then the separating distance may be multiplied without disturbing in the least the controlling effect of the designation.

 A distant set of switching facilities, whether reached over a main line track, or over a distinct track limited in its use to transfer purposes, will be classed as a separate yard. The use of a switch engine in the transfer movement, as distinguished from a road locomotive, will not change the case. A transfer operation is a train movement when it is unaccompanied by switching operations between transfer points. The minimizing of the element of danger to employees or the public using the streets which are crossed, by posting signalmen at intersections, or by traveling at slow speeds, cannot affect the question.

The dominating factor is said by the Supreme Court in U. S. v. C., B. & Q. Ry., 237 U. S. 410, 35 S. Ct. 634, 636, 59 L. Ed. 1023, to rest in "the essential nature of the work done." And thus it has been held that a transfer of a number of cars from one terminal to another for delivery, without uncoupling, is a train movement and not one of switching, Louisville & Jeffersonville Bridge Co. v. U. S., 249 U. S. 534, 39 S. Ct. 355, 63 L. Ed. 757; that the act does not limit the application of its requirements to movements on main line tracks, U. S. v. Northern Pacific R. Company, 254 U. S. 251, 41 S. Ct. 101, 65 L. Ed. 249; that the transfer of twenty-four cars from one yard unit to another over a distance of 4,800 feet constitutes a train movement, Great Northern Ry. Co. v. U. S., 288 F. 190 (C. C. A. 8). Other decisions are of like import.

 In our opinion the several transfers described in the five counts of the complaint constituted "train" movements, during which the defendant company was required to have in use power brakes operable as described in the Safety Appliance Act.

 The defendant has for many years made use of the transfer track in the manner described in the complaint, without criticism from the inspecting officers. The result of our decision will without doubt work inconvenience and cause added expense in the handling of the company's terminal business. These considerations, however, cannot change the application required to be made of the statute terms to the facts presented by the record.

The judgment is reversed.