UNITED STATES v. SOUTH BUFFALO RY. CO.

Civ. No. 2095.

District Court, W. D. New York.

April 17, 1947.

462

George L. Grobe, U. S. Atty., and R. Norman Kirchgraber, Asst. U. S. Atty., both of Buffalo, N. Y., and Henry J. Vinskey, Sp. Asst. to U. S. Atty., of Washington, D. C., for plaintiff.

Kenefick, Cooke, Mitchell, Bass & Letchworth, of Buffalo, N. Y. (Gravath, Swaine & Moore, Bruce Bromley and Frank M. McGarry, all of New York City, of counsel), for defendant.

KNIGHT, District Judge.

This is a civil action brought to collect a penalty for violating the Safety Appliance Act, Title 45 U.S.C.A. §§ 1 to 16, and an order of the Interstate Commerce Commission, issued pursuant thereto, dated June 6, 1910. The original complaint was based on 10 causes of action. Eight of them were based on defective safety appliances, other than air brakes, while the remaining two are based on the allegations of violations in respect to the equipment and operation of trains without the required per cent of cars operated by brakes by the engineer drawing the train.

The pertinent sections of said Title 45 are 1, 6 and 9. Section 9 is entitled "Number of cars to be operated with power or train brakes; increase of number." It provides in part that when "any train is operated with power or train brakes not less than 50 per centum of the cars * * * shall have their brakes used and operated by the engineer of the locomotive drawing such train; and all power-braked cars in such train which are associated together with said 50 per centum shall have their brakes so used and operated; * * *." This section authorizes the Interstate Commerce Commission "after full hearing" to "increase the minimum percentage of cars in any train required to be operated with power or train brakes which must have their brakes used and operated as aforesaid; * * *." It also provides that failure to comply with the requirement of the Interstate Commerce Commission shall subject the offender to the penalty fixed by the Act.

Pursuant to such authority, on June 6, 1910, the Interstate Commerce Commission issued an order, effective as of September 1, 1910, providing, among other things, that "* * * whenever, * * * any train is operated with power or train brakes, not less than 85 per cent of the cars of such train shall have their brakes used and operated by the engineer of the locomotive drawing such train, and all power-brake cars in every such train which are associated together with the 85 per cent shall have their brakes so used and operated."

The determinative question in applying the Act in the instant case is whether defendant's operations were "switching movements" or "train movements." The word "train" in the Act and the said Order refers to "train" movement, and it is distinguished, as hereinafter shown, from what is commonly known as a "switching" movement.

A recent opinion of this court, United States v. South Buffalo Railway Co. et al., D.C., 69 F.Supp. 456, contains a description of the South Buffalo Railroad system, which it does not seem necessary to repeat. Suffice it to say that the system comprises an area about six miles long and three miles wide, and contains many switches serving numerous industrial plants, and particularly the Bethlehem Steel Company. These switches ultimately also connect with a lead track by which connection is made between these plants, a number of long haul railroads and tracks of defendant's yards.

The third cause of action relates to the movement by the defendant in the afternoon of December 4, 1944, of a cut of cars consisting of 15 freight cars drawn by its yard engine from a point opposite the Buffalo Sintering Corporation buildings, at Buffalo, N. Y., to the yard near the Bethlehem Steel Company's plant at Lackawanna, a distance of about two miles. It is not denied that only the first 10 cars, or less than 85% of the total 15, had their air brakes used and operated by the locomotive engineer. No cars were picked up or set out en route.

The sixth cause of action involves an operation in the afternoon of December 5, 1944, of another cut of cars also consisting of 15 freight cars and drawn by a yard engine in direction reverse from that described in the third cause of action, i. e., from opposite the police guard building at Lackawanna to defendant's Marilla Street yard opposite the Buffalo Sintering plant. It is not denied that none of these cars had their air brakes used and operated by the engineer; that no cars were picked up or set out in the movement, and in the movement defendant passed over one private highway crossing at grade.

In both instances the cars were assembled at one point in defendant's yard and removed intact to another point in the yard over a single track line connecting these points. It seems to be undenied that the defendant's whole system includes only a single yard.

The undisputed facts are that switching cars is the sole business of the defendant; its trains are used only in switching service; its entire equipment, with possible exception of a few cars, is suitable only for use in switching service; no public streets, highways or tracks of other railroads are crossed at grade in any of the movements complained of herein, except one private industrial crossing owned by the Bethlehem Steel Company and restricted in its use to the latter's employees and others to whom permission is given by such Company to pass into the Company's property; these movements on the track are effected by switching engines; they are under the supervision and control of the yard master and crews; the movements are not made under train order or time table schedules; there is no block system; the movements are made at slow speed during which a member of the crew is stationed at the forward end of the locomotive in order to watch the track ahead.

The applicable provisions of the Safety Appliance Act impose an absolute duty. Admittedly it does not apply to the aforesaid two charges, unless the trains were engaged in a "train movement." The plaintiff has cited numerous decisions of the Supreme and other courts. Each one of these is distinguishable on its facts from the instant suit. Safety of operation is the intent of the Act. It never was contemplated that the railroads should be compelled to provide and use operational facilities such as those claimed to be lacking here to insure safety of individuals in strictly switching operations. Hazard is what Congress sought to lessen. It was not intended to burden railroads with some operational acts wholly unnecessary. It is not necessary to quote pertinent language from all of the plaintiff's cited authorities. All disclose generally similar operations with each other. The forerunner of these Supreme Court cases is: United States v. Erie R. Co., 237 U.S. 402, 35 S.Ct. 621, 624, 59 L.Ed. 1019. There the connecting tracks were the main tracks over which freight moved from and to points around New York harbor; the connecting tracks passed over several switches and traversed part of the same line over which 15 regular through and local trains moved each day. The distinction is plain, and this language

of the court is pertinent: "But it is otherwise with the various movements in railroad yards whereby cars are assembled and coupled into outgoing trains, and whereby incoming trains which have completed their run are broken up. These are not train movements, but mere switching operations, * * *."

Again, in Louisville & Jeffersonville Bridge Co. v. United States, 249 U.S. 534, 39 S.Ct. 355, 63 L.Ed. 757, the movement was over a main line track across many connections with other tracks, and street crossings, with stops and startings on the main track.

The same is true in the following cases cited by the plaintiff: United States v. Northern Pacific R. Co., 254 U.S. 251, 41 S.Ct. 101, 65 L.Ed. 249; United States v. Chicago, Burlington & Quincy R. Co., 237 U.S. 410, 35 S.Ct. 634, 59 L.Ed. 1023; United States v. State of California, 297 U.S. 175, 56 S.Ct. 421, 80 L.Ed. 567; United States v. Galveston, H. & H. R. Co., 5 Cir., 255 F. 755; Chicago & Erie R. Co. v. United States, 7 Cir., 22 F.2d 729; Great Northern R. Co. v. United States, 8 Cir., 288 F. 190; Illinois Central R. Co. v. United States, 8 Cir., 14 F.2d 747; United States v. Southern Pacific Co., 9 Cir., 60 F.2d 864; United States v. Great Northern R. Co., 9 Cir., 73 F.2d 736; United States v. Southern Pacific Co., 9 Cir., 100 F.2d 984.

It will be seen that some of the foregoing decisions are decisions in the Circuit Courts where the Supreme Court rendered later opinions.

 The plaintiff draws certain conclusions from the foregoing cases, with some of which we agree and with some of which we disagree. Movement of a car for considerable distance without uncoupling cars or switching may or may not be a switching movement, dependent upon the particular situation. The mere fact that a railroad company designates a large tract as a yard does not of itself make every operation therein a switching operation, though in the instant case all of the movements were within a comparably short space. The distance between the so-called yards was largely caused by extensive switching

tracks of the Bethlehem Steel Company. The movement of cars between parts of the same yard wherein, in such movement, no cars are set out or picked up is not necessarily a train movement nor does the mere fact that the assemblage of cars is transferred by an operation without time tables or block signals with a switching engine and yard crew make such transfer a switching movement. It is a fact to be taken into consideration in determining character of the movement and the character of the line over which transportation was made between the two yards, whether on the main line of the railroad or on another line, but it alone is not controlling. In the instant case, as we view it, the particular line between the two yards was in fact a "switching" line. Its whole use was for that purpose. It is quite true, as asserted by the plaintiff, that the controlling test of the statute's application lies in the "essential nature of the work done" rather than in the names applied to those engaged in it. We say the "essential nature of the work done" here was a "switching" operation rather than a "train movement." It is true, as stated by the plaintiff, the assembling of cars prior to their movement or distribution after the movement is completed does not control. However, as pointed out, the fact that these cars and other cars were returned for deliveries to industries along defendants' system seems clearly to indicate a switching movement. It is true that "the construction which the Act should receive is not to be found in balancing the dangers which would result in obeying the law from those which would result in violating it nor in considering what portion will equal in safety those prescribed by the Act." But weight should be given to the fact that the short connection here crossed no railroad, and no street or other crossing, save one adequately protected, in determining the nature of the movement. In Chicago & E. R. Co. v. United States, 7 Cir., 22 F.2d 729, 730, cited by the plaintiff and referring to the opinion in United States v. Chicago, Burlington & Quincy R. Co., supra, it was said: "* * * very many conditions and elements were considered which seem to influence the determination of the question." It will be seen

on the examiation of many of the cases in the Supreme Court on the question involved here that the opinions stress the "conditions and elements" which related to the movement of the trains.

■ The defendant directs attention to certain communications from the Interstate Commerce Commission as demonstrating the recognition of the defendant's system of tracks as devoted to "switching operations." It quotes from letters of June 11, 1924, May 7, 1940, and October 2, 1940. We agree with the plaintiff that these letters concern accounting practices and therefore are of little, if any, weight here. Aside from this, it is quite true that the view of the Interstate Commerce Commission should have weight with the court. The defendant also directs attention to the case of United States v. Great Northern Ry. Co. In this case there were two trials. On the first of these the trial court was reversed on the ground of improper admission of evidence. In the opinion in that case (9 Cir., 68 F.2d 610, 612) we find this language: "That the 'hazards' attending a train movement constitute an element to be considered in applying the statute in question was made clear in the leading case of United States v. Erie R. Co., supra, at page 408 of 237 U.S., 35 S.Ct. 621, 624, 59 L.Ed. 1019: * * *." On the second trial (9 Cir., 73 F.2d 736), the defendant was sustained. The jury found that movement was a mere "switching movement." The evidence showed that appellee's switch engine, "operated by a switching crew, started from one of the tracks adjacent to the Great Northern freight house, located in the northerly portion of said house yard, and ran light, or without any cars, to Spokane street, which forms the southerly boundary of the yard where the tracks form a curve to what is called Fifth avenue switching track." Three cars were collected on the west side of the Fifth avenue right of way and moved back to Spokane street. The distance of the movement of engine and three cars was over a mile. The court said: "Applying the criterion evolved from the decisions of the Supreme Court of the United States that 'the controlling test of the statute's application lies in the essential nature of the work done,' the facts warranted the finding that the crew at the time was engaged in the assembly of cars by means of a series of switching movements, and that at the time complained of the cars had not been assembled into a train to be transferred as such to any particular point." 73 F.2d at page 739. The trial court, as shown in the opinion 73 F.2d at page 739, in instructing the jury said: "If you should find that at the time and place where the offense referred to in the complaint is alleged to have occurred, the engine and cars were being used in a switching operation and were not then run as a train, your verdict should be for the defendant, * * *." The Circuit Court said that these instructions, which included definition of train movement, were adequate.

For the reasons hereinbefore stated, both causes of action in the complaint must be dismissed.

Findings are to be submitted for the signature of the Court.