UNITED STATES v. NORTHERN PAC. RY. CO.

Civ. No. 2160.

District Court, D. Minnesota, Fourth Division.

May 19, 1947.

Victor E. Anderson, U. S. Atty., and Clifford F. Hansen, Asst. U. S. Atty., both of St. Paul, Minn., and Henry J. Vinskey, of Washington, D. C., for plaintiff.

L. B. daPonte and Reginald Ames, both of St. Paul, Minn., for defendant.

NORDBYE, District Judge.

The United States contends that a certain movement of cars in defendant's yards without cutting in the air constitutes a violation of the Safety Appliance Act, 45 U.S.C.A. § 1 et seq. The defendant, conceding that it is engaged in interstate commerce, contends that the movement was a mere switch movement and hence not in violation of law. The essential facts are not in dispute. There were 47 cars in the movement. They were assembled on the so-called macaroni lead track, which runs parallel to the double main line track of the defendant. Generally speaking, this track may be said to run in an east and west direction, and, as far as the evidence indicates, is about 1.2 miles in length. It crosses at grade 27th Street N. E., Lowry Avenue N. E., and 22nd Street N. E., in the City of Minneapolis. Lowry Avenue is a busy thoroughfare, with a street-car line operating on it. The movement or transfer of cars easterly along the macaroni lead was for the purpose of providing various industries at and along the easterly end of the lead with cars which were to be spotted at designated places for loading and unloading. Apparently the transfer of the cars in this manner is a daily movement, without, however, any fixed schedule and no caboose is attached to the cars as they are being moved. The Government refers to the movement as a transfer of cars from the North Side Junction Yards to the Northeast Minneapolis Yards, but that designation is not sustained by the weight of the evidence. It would seem that the movement is more properly designated as a transfer of cars along the macaroni lead track from the westerly to the easterly end of the Northeast Minneapolis Yards. Of the 47 cars in the movement in question, 15 cars had the air cut in. The air brakes on the remaining 32 cars were not coupled in. The reason assigned for the air in the 15 cars was to enable the spotting of these cars at an industry on an incline siding which required the setting of the brakes. These 47 cars were pushed easterly by a Diesel switch engine; a switch crew was in charge; the speed was not high, ranging from four to seven miles an hour. The hand brakes on the two forward cars were lightly set by hand to control the speed of the movement. At the street intersections referred to, the brakeman at the forward end ran ahead to warn drivers of vehicles, the street-car motorman, and pedestrians of the impending crossing of the cars. At Lowry Avenue a street-car was quickly brought to a stop in order to give the moving railway cars the right of way. Along the 1.2 mile run, no cars were switched off nor were any cars added to the string of cars being transferred, and, as far as the evidence indicates, this movement on the day in question was typical of the daily movements of this particular transfer of cars on the macaroni lead track. This track, however, did not intersect any main line of track, nor was it used for the movement of any regular passenger or freight trains.

In light of these facts, was the movement of these cars a train movement within the purview of the statute which provides that the air brake requirement shall apply to all trains on any railroad engaged in interstate commerce? The Safety Appliance Act is a remedial statute and the purpose of the law should be considered in determining whether any given situation is covered by the enactment. Granted that the line of demarcation between a switching movement and a train movement may be at times difficult of determination, it would seem that a fair analysis of the admitted facts herein should remove any real doubt in that regard. This was not an operation where cars were sorted, selected, or classified, involving coupling and uncoupling, and

movement of one or a few cars at a time for short distances. Louisville, etc., Bridge Co. v. United States, 249 U.S. 534, 39 S.Ct. 355, 63 L.Ed. 757. As stated, not a single car was added to or taken from the 47 cars which were transferred over a mile across these three street grade crossings. Generally it may be stated that the purpose of the Act is to secure safety for the employees of the railroad and for the public. That the public is endangered by the shoving of 47 freight cars across street crossings where there are movements of vehicles, pedestrians and street-cars seems too clear for serious argument. With this number of cars being shoved, the power brakes on the engine would be insufficient to stop the train speedily in an emergency. This seems evident because the hand brakes on the forward cars were partially set to overcome the momentum of the moving cars and to impede the running of the train. In fact, with the air brakes set on the 15 cars next to the engine a sudden stop would have a tendency to break loose the 32 cars not equipped with air. But even though the care used by the defendant in operating the transfer at a cautious rate of speed and the brakeman's running ahead of the cars at street crossings to warn the traffic on the street tended to reduce the probability of accidents to a minimum, the duty to comply with the Act cannot be ignored if that duty exists. This Court is not authorized to determine whether the care adopted by the defendant in conducting the movement is equivalent in safety to that which would exist if the train were equipped with air. Louisville, etc., Bridge Co. v. United States, supra. True, these cars were being transferred for the purpose of being spotted at certain industries for loading and unloading, but that is basically the purpose of moving any cars in any train. Instead of a non-stop movement from one scheduled station to another, this was a non-stop movement from one portion of the yard to another portion of the yard of sufficient length so as to be considered a train movement. As stated in United States v. Northern Pacific R. Co., 254 U.S. 251, 254, 41 S.Ct. 101, 102, 65 L.Ed.

249: "A moving locomotive with cars attached is without the provision of the act only when it is not a train; as where the operation is that of switching, classifying and assembling cars within railroad yards for the purpose of making up trains."

The switching movements, however, contemplated as being without the purview of the Act are definitely limited by the language of the Supreme Court in the Louisville Bridge case, supra, in which the court said (at page 538 of 249 U.S., at page 356 of 39 S.Ct., 63 L.Ed. 757): "The work done with the cars, as described, was not a sorting, or selecting, or classifying of them, involving coupling and uncoupling and the movement of one or a few at a time for short distances, but was a transfer of the 26 cars as a unit from one terminal into that of another company for delivery, without uncoupling or switching out a single car, and it cannot therefore with propriety be called a switching movement."

Reference is made to the fact that the operations herein were not on the main line of the defendant's railroad, nor did the macaroni lead track intersect with any portion of defendant's main line, but, as stated in United States v. Northern Pacific R. Co., supra, at page 254, of 254 U. S., at page 102 of 41 S.Ct., 65 L.Ed. 249, "there is nothing in the act which limits the application of the provision here in question to operations on main line tracks." Nor is it controlling that the transfer was made with the switch engine and the yard crew. United States v. Northern Pacific R. Co., 254 U.S. 251, 41 S.Ct. 101, 65 L.Ed. 249; Chicago, St. P. M. & O. R. Co. v. United States, 8 Cir., 36 F.2d 670; Illinois Cent. R. Co. v. United States, 8 Cir., 14 F.2d 747; Chicago & E. R. Co. v. United States, 7 Cir., 22 F.2d 729. Considering the fact that the movement consisted of a transfer of some 47 cars over a mile, across three street intersections, one of which was an extremely busy crossing, without the switching off or taking on of any other cars during that movement, and considering the hazards which the law is designed to prevent and its remedial character, it would seem that, under these cir-

cumstances, any doubt in the matter should be resolved in favor of the application of the law and that sound reason fairly justifies the designation of the movement as a train movement rather than a switching movement. It follows, therefore, that the Government is entitled to judgment on its second cause of action.

Findings of fact and conclusions of law consistent herewith may be presented by the plaintiff. An exception is reserved to the defendant.