## UNITED STATES v. NEW ORLEANS PUBLIC BELT RAILROAD.

### Nos. 1538, 1595.

District Court, E. D. Louisiana,
New Orleans Division.

June 18, 1948.

Robert Weinstein, U. S. Atty., Amos L. Ponder, Jr., Asst. U. S. Atty., both of New Orleans, La., James O. Tolbert, Atty., Interstate Commerce Commission, Sp. Asst. to the U. S. Atty., of Washington, D. C., for the Government.

Michel Provosty, of New Orleans, La., for defendant.

WATSON, District Judge.

These actions consolidated are before the Court following trial by the Court without a jury.

The Complaint in No. 1538 contains five causes of action and the Complaint in No. 1595 contains nine causes of action involving defects in cars under the Safety Appliance Acts, 45 U.S.C.A. 1–16, and one cause of action involving what is referred to as the "airbrake provision" of the Act.

Section 2 of the Act provides that all railroad cars be equipped with couplers coupling automatically by impact, and which can be uncoupled without the necessity of men going between the ends of the cars. In No. 1595, causes of action 1, 2, 3, 4, 5, 7, 8, and 9, and in No. 1538, cause of action 1, involve said Section 2 of the Act.

Section 11 of the Act provides that all cars be equipped with efficient hand brakes, and certain types of cars with secure running boards. In No. 1595, cause of action 6, and in No. 1538, causes of action 2, 3, 4, and 5 involve the application of Section 11 of the Act.

The 10th cause of action in No. 1595 involves Section 9 of the Act which provides, as supplemented by order of the Interstate Commerce Commission, that not less than 85% of the cars in a train shall be equipped with power brakes under the control of the engineer on the locomotive drawing the train.

The plaintiff contends that the defendant is guilty of fifteen violations of the provisions of the Acts of Congress known as the Safety Appliance Acts, and for each violation the defendant is liable to the plaintiff in the sum of $100.

### Discussion.

All of the actions except the 10th cause of action in No. 1595 involve questions of fact only. On behalf of the plaintiff, detailed testimony was given by C. E. Danforth, an employee of the Bureau of Safety, Interstate Commerce Commission. He testified as to the facts disclosed by his investigation; namely the faulty couplings, running boards, and hand brakes of each of the cars mentioned in the Complaint. Following the completion of the cross examination of Mr. Danforth, a stipulation of counsel was entered agreeing that if Joseph H. Reilly, who accompanied Mr. Danforth on his inspections, were called as a witness

that his answers to the questions propounded would be the same as those given by C. E. Danforth upon direct, cross, and redirect examination. In contradiction of the testimony referred to, testimony was introduced by five witnesses on behalf of the defendant, New Orleans Public Belt Railroad, as to the condition of each car mentioned in Nos. 1538 and 1595, and it was testified that several of the cars had been transferred to other railroads after inspection with no exceptions having been taken to their condition by such other railroads.

■ This Court gives weight to the testimony of C. E. Danforth who noted the condition of each car at a particular time and at a particular place, when the contradictory testimony is, as to some of the cars, negative in character and by witnesses who did not remember precisely the car examined. This Court is forced to the conclusion that the defects as testified to and supported by photographs and exhibits did exist, and that the defendant is liable to the plaintiff in the sum of $100 for each violation.

Cause of action 10 of No. 1595 presents a matter of law rather than one of fact, since it was stipulated at the trial that the air brakes of the cut of 28 cars drawn by locomotive engine No. 43 were not connected so as to be under the control of the engineer on the locomotive drawing the train. The defendant contends that a switching operation in a railroad yard is not such a train movement as is contemplated by the Act, and that the movement of the 28 cars was a switching operation.

The witness for the Government testified that, on March 21, 1946, engine No. 43 of the New Orleans Public Belt Railroad moved 28 cars from the tracks adjacent to the wharf platforms in the vicinity of the Poydras Street Yard of the New Orleans Public Belt Railroad and assembled the cars on the east bound main track. Engine No. 43 then coupled to the 28 cars and moved westward without having coupled the air hose between the locomotive and the first car. He further testified that the train moved from Girod Street beyond Race Street before it stopped, a distance of approximately 6,000 feet, and, in doing so, crossed Race Street and stopped at Market Street. This movement was made without any switching operations between the starting and stopping point, without any stops, and by crossing four streets and nine railroad tracks at grade. The defendant's witnesses testified that all of the streets crossed led to wharves and were not through public streets; also that the railroad tracks crossed were used only for switching operations to the wharves.

■ This Court feels that the operation testified to by the various witnesses reveals that in reality the New Orleans Public Belt Railroad was moving this particular cut of 28 cars from the Poydras Yard to the Race Yard as shown on the map received in evidence.

■ No arbitrary figure may be set as to the distance to be traveled before an operation ceases to be a switching operation. The cut of cars and the engine attached thereto which are involved in this case were exposed to the hazards which the Act was intended to avoid or minimize, and the engineer would not have been able readily and quickly to check or control its movements. This was not a movement solely within one railroad yard but was a movement along a heavily crossed right-of-way. A transfer operation is a train movement when it is unaccompanied by switching operations between transfer points. United States v. Southern Pac. Co., 9 Cir., 60 F.2d 864; certiorari denied, 287 U.S. 667, 53 S.Ct. 291, 77 L.Ed. 575.

The operation of a railroad is necessarily hazardous, and all possible protection should be given to those carrying on the operation or in occupations connected therewith, and any considerations of expediency or economy should not be permitted to interfere with this objective.

Under the plain meaning of the Act and the Congressional intent, the plaintiff is entitled to the judgments prayed for.

Findings of Fact, Conclusions of Law, and the Order directing the entry of judgments will be filed herewith.