ST. JOSEPH & GRAND ISLAND RAILWAY COM-
PANY *v.* MOORE.

ERROR TO THE SUPREME COURT OF THE STATE OF MISSOURI.

No. 573.   Argued January 30, 1917.—Decided March 6, 1917.

An action governed by the Federal Employers' Liability Act is not removable from the state to the federal court upon the ground of diverse citizenship.

Where there is substantial evidence of negligence to support the verdict in an action for personal injuries, this court will not disturb the finding of a state court.

Under the Safety Appliance Act, 27 Stat. 531, c. 196, as amended by the Act of March 2, 1903, 32 Stat. 943, c. 976, the duty to provide grab-irons or hand-holds on the ends, as well as on the sides, of locomotive tenders is an absolute duty which must be literally complied with, and claimed equivalents can not satisfy the law.

268 Missouri, 31, affirmed.

THE case is stated in the opinion.

*Mr. Robert A. Brown* for plaintiff in error.

*Mr. John G. Parkinson* for defendant in error.

Mr. Justice Clarke delivered the opinion of the court.

Moore, the defendant in error, was in the employ of the plaintiff in error as a brakeman, and was desperately injured on June 9, 1910. His claim is that at the moment of the accident he was engaged in adjusting a defective automatic coupler on the rear end of the tender of an engine, which was started unexpectedly, causing him to be thrown from his feet by the steam hose equipment, which hung down to within a few inches of the surface of the track, and that, in part because the tender was not equipped with grab-irons or hand-holds, as required by the federal law, he fell helpless under the wheels and lost both of his hands.

He recovered a judgment in the trial court, which was affirmed by the Supreme Court of Missouri, and the case is here on writ of error.

The applicability of the Employers' Liability Act to the case was admitted from the beginning, but nevertheless a petition was promptly filed for the removal of the case to the United States Circuit Court on the ground of diversity of citizenship. This petition was denied and the claim that this denial constitutes reversible error is now argued here, albeit somewhat faintly. The claim is wholly without merit, as is apparent from the plain reading of the Federal Employers' Liability Act and as is determined in *Kansas City Southern Ry. Co.* v. *Leslie*, 238 U. S. 599, and in *Southern Railway Co.* v. *Lloyd*, 239 U. S. 496.

It is claimed, with much apparent confidence, that no substantial evidence appears in the record to support the judgment of the state courts, and that under the authority of *Southern Pacific Co.* v. *Pool*, 160 U. S. 438, the judgment

should be reversed.  An inspection of the record satisfies us that substantial testimony was introduced in support of the claimed negligence of the railroad company and that, applying the usual rule, the result cannot be disturbed on this claim.

But chief emphasis, perhaps, is laid in the argument upon the claim that the trial court erred in refusing to say to the jury, as a matter of law, that: "Any iron rod or iron device securely fastened upon the end of defendant's tender to which employees could conveniently catch hold while in the performance of their duties in coupling or uncoupling cars was a hand-hold or grab-iron within the meaning of the law," and that, therefore, if the vertical iron hand-hold, and iron rod—pin-lifting or uncoupling lever—extending across the tender just above the coupler, were so designed and constructed as to permit employees engaged in coupling or uncoupling cars to readily grasp them for their better security while in the performance of such work, the defendant was not guilty of negligence in failing to provide necessary and proper hand-holds or grab-irons and the plaintiff cannot recover for any injury sustained from lack of them on the engine tender.

The trial court gave this request as the law of the case, but provided, only, the jury should find "that said attachments or devices furnished reasonable security to the employees of defendant in coupling and uncoupling said tender and cars."  The railroad company excepted to this modification of its request to charge and argues now that to so modify it was error.

We quite agree with the Supreme Court of Missouri in its conclusion that the giving of the company's request, even as modified by the trial court, was error in its favor, being much more than it deserved under the law.

Section 4 of the safety appliance statute provides: "It shall be unlawful for any railroad company to use any car in interstate commerce that is not provided with se-

cure grab irons or handholds in the ends and sides of each car for greater security to the men in coupling and uncoupling cars." 27 Stat. 531. This statute was, in terms, made applicable to tenders of engines by the amendment of 1903, 32 Stat. 943, c. 976.

The request preferred is an obvious attempt to secure the application of the doctrine of equivalents to the Safety Appliance Act, and to persuade the court to say that it is not necessary for carriers to comply with the law if only they will furnish some other appliance which one jury may say is "just as good" but which another jury may say is not.

It is much too late for such a claim to be seriously entertained. In the case of *St. Louis, Iron Mountain & Southern Ry. Co.* v. *Taylor*, 210 U. S. 281, often approved by this court, it was settled, once for all, that Congress, not satisfied with the common-law duty and its resulting liability, in the Safety Appliance Act of March 2, 1893, 27 Stat. 531, prescribed and defined certain definite standards to which interstate carriers must conform, and of the required automatic couplers this court said, Congress has "enacted that 'no cars, either loaded or unloaded, shall be used in interstate traffic which do not comply with the standard.' There is no escape from the meaning of these words. Explanation cannot clarify them, and ought not to be employed to confuse them or to lessen their significance."

The exercise of care, even the greatest, in supplying and repairing these appliances will not excuse defects in them,—the duty and liability are absolute. *St. Louis, Iron Mountain and Southern Ry. Co.* v. *Taylor, supra; Great Northern Ry. Co.* v. *Otos*, 239 U. S. 349, 351. If equivalents were allowed the statute would be lost in exceptions and its humane purpose defeated in the uncertainty of litigation.

The request to charge on which the plaintiff in error re-

lies in its terms implies the absence of the required hand-holds or grab-irons, and an inspection of the photograph of the tender confirms the inference. The vertical hand-hold referred to in the request was at the corner of the tender and could be useful only to a man walking or running alongside the track to operate the uncoupling lever, or, as it is sometimes called, the pin-lifting lever. It could not be of value when the automatic coupler was not in working condition or to a man in the position in which Moore was when injured.

This grab-iron requirement first appears in the Act of 1893 and the amendment ten years later (March 2nd, 1903) 32 Stat. 943, making the requirement in terms applicable to tenders did not change it. Whatever may be said of 1893, there can be no doubt that in 1903 automatic couplers, and therefore uncoupling or pin-lifting levers, were in common, if not general, use, on the tenders of engines, and if Congress had intended them to be accepted as a substitute for hand-holds or grab-irons we must assume that the amendment of 1903 would have so provided. The statute requires both. If practical confirmation of this conclusion were desired it is to be found in the fact that in the order of the Interstate Commerce Commission standardizing safety appliances, under the Act of Congress of April 14, 1910, 36 Stat. 298, two rear end hand-holds are required on locomotives "one near each side on rear end of tender *on the face of the end sill.*"

It is not admissible to allow such an important statutory requirement to be satisfied by equivalents or by anything less than literal compliance with what it prescribes. The charge as given being more favorable to the company than it deserved, the judgment of the Supreme Court of Missouri is

*Affirmed.*