## UNITED STATES v. GREAT NORTHERN RY. CO.

### No. 7251.

Circuit Court of Appeals, Ninth Circuit.

Jan. 29, 1934.

Anthony Savage, U. S. Atty., and Tom DeWolfe, Asst. U. S. Atty., both of Seattle, Wash., and M. C. List, Sp. Asst. U. S. Atty., for the United States.

Thomas Balmer and Charles S. Albert, both of Seattle, Wash., for appellee.

Before WILBUR, SAWTELLE, and GARRECHT, Circuit Judges.

SAWTELLE, Circuit Judge.

In an action to collect a penalty for the alleged violation of an order of the Interstate Commerce Commission, issued on June 6, 1910, in pursuance of the provisions of section 2 of the Act of March 2, 1903 (45 USCA § 9), commonly known as the Safety Appliance Act, the appellant's complaint contained the following allegation:

"* * * Defendant operated said [transfer] train * * * over its line of railroad in and about Seattle * * * when none of the cars in said train had their brakes used and operated by the engineer of the locomotive drawing said train, and when less than 85 per cent of the cars which composed said train had their brakes used and operated by the engineer of said locomotive engine. * * *"

The order of the commission reads as follows:

"It is ordered: That on or after September 1, 1910, on all railroads used in interstate commerce, whenever, as required by the Safety Appliance Act * * * any train is operated with power or train brakes, not less than 85 per cent of the cars of such train shall have their brakes used and operated by the engineer of the locomotive drawing such train, and all power-braked cars in every such train which are associated together with the 85 per cent shall have their brakes so used and operated."

The alleged "transfer" consisted of twelve cars drawn by a locomotive. The movement complained of was "slightly longer than 1.45" miles, "involved no intermediate switching on the day in question," and occurred in the "Seattle House Yard," an industrial district in the southern part of Seattle, on January 19, 1932.

At the close of all the testimony in the case, the appellant moved the court for a directed verdict in its favor, which motion was denied.

The jury returned a verdict of not guilty, and the appellee was dismissed by a judgment of the court, from which judgment the present appeal was taken.

If the operation in question was a "train" or "transfer" movement, it came within the purview of the statute and the commission's order; otherwise, it did not. United States v. Erie R. Co., 237 U. S. 402, 408, 35 S. Ct. 621, 59 L. Ed. 1019.

In its brief, on the question of whether or not the court erred in permitting the case to go to the jury, the appellant asserts that "the fact that in the instant case the entire 1½ mile movement was made without a single stop is evidence sufficient to indicate not only that switching was not performed, but that such straight movement from lead track to the freight house yard was pre-determined."

There are twenty assignments of error. Under our view of the case, however, it is necessary to consider only the two assignments which deal with the admission of testimony that "coupling up the air hose between cars"

was "extremely dangerous." An objection to a question on that subject was seasonably made by counsel for the appellant, an exception was duly noted, and error was properly assigned. Likewise, a motion by appellant that testimony to the same effect by the same witness be stricken, was denied, an exception duly taken, and an assignment of error properly made.

The decisions have settled the proposition that the sanctions of the Safety Appliance Act are "positive" and "absolute," and that the question of the danger which might result from compliance with the statute is not a matter for the courts, but for Congress.

Thus in Louisville & Jeffersonville Bridge Co. v. United States, 249 U. S. 534, 539, 39 S. Ct. 355, 357, 63 L. Ed. 757, probably the leading case on this phase of the subject, the court said:

"It is argued that coupling of the train brakes was not necessary for the reason that the street crossings used were protected by gates, that a yard master from an elevated tower watched over the main line movements, and that the coupling of the train-brake appliances would involve more danger to the employees than the movement of the cars without their being used and operated. These suggestions serve to emphasize the dangerous character of the movement. But the construction which the act should receive is not to be found in balancing the dangers which would result from obeying the law with those which would result from violating it, nor in considering what other precautions will equal, in the promotion of safety, those prescribed by the act. Such considerations were for Congress when enacting the law, and it has repeatedly been held by this court that other provisions of the Safety Appliance Act impose upon the carrier the absolute duty of compliance in cases to which they apply, and that failure to comply will not be excused by carefulness to avoid the danger which the appliances prescribed were intended to guard against, nor by the adoption of what might be considered equivalents of the requirements of the act. St. Louis, Iron Mountain & Southern Ry. Co. v. Taylor, 210 U. S. 281, 295, 28 S. Ct. 616, 52 L. Ed. 1061; Great Northern Ry. Co. v. Otos, 239 U. S. 349, 36 S. Ct. 124, 60 L. Ed. 322; St. Joseph & Grand Island Ry. Co. v. Moore, 243 U. S. 311, 37 S. Ct. 278, 61 L. Ed. 741."

To the cases cited in the Louisville & Jeffersonville Bridge Case, supra, might be added Minn. & St. Louis R. Co. v. Gotschall, 244 U. S. 66, 67, 68, 37 S. Ct. 598, 61 L. Ed. 995.

Again, in United States v. Northern Pac. R. Co., 254 U. S. 251, 255, 41 S. Ct. 101, 102, 65 L. Ed. 249, Mr. Justice Brandeis said:

"Congress has not imposed upon courts applying the act any duty to weigh the dangers incident to particular operations; and we have no occasion to consider the special dangers incident to operating trains under the conditions here presented."

The Louisville & Jeffersonville Bridge Case, supra, was followed by this court in Great Northern R. Co. v. United States, 297 F. 692, 696.

See, also, Chicago, B. & Q. R. Co. v. United States, 220 U. S. 559, 575, 31 S. Ct. 612, 55 L. Ed. 582; Galveston, H. & H. R. Co. v. United States (C. C. A. 5) 265 F. 266, 267, certiorari denied 254 U. S. 643, 41 S. Ct. 14, 65 L. Ed. 453; United States v. Western & A. R. R. (D. C.) 297 F. 482, 483; Chicago & E. R. Co. v. United States (C. C. A. 7) 22 F.(2d) 729, 730.

"Literal compliance" with the requirements of the Safety Appliance Act was declared imperative by the Supreme Court in St. Joseph & G. I. R. Co. v. Moore, supra, at page 315 of 243 U. S., 37 S. Ct. 278.

Obviously, therefore, the injection of the question of "safety" into the duty of compliance with the statute is irrelevant, and the testimony admitted by the court below might easily have confused the jury as to the real issue involved; that is to say, Did or not the appellee "literally" comply with the "positive" and "absolute" mandates of the statute?

The appellee, however, seeks to justify the introduction of this "safety" evidence on the ground that the appellant, in the language of the day, "started it first." "With equal force," says the appellee, "the Government might complain of the evidence offered by its own Inspector, showing that a number of streets and main line railroads were crossed by the switch engine and twelve cars. * * * In support of our contention that the work was switching, we submit that it was equally proper to show the hazards of coupling and uncoupling the air brakes in an operation where usually the engine was constantly being stopped and started for the purpose of picking up and setting out cars."

Under the decisions, this position of the appellee's involves a non sequitur. While it is true the defendant in an action of this character is not permitted to show that compliance with the statute would be dangerous, it does not follow that the government may not introduce evidence to prove that dangers to

the public and to other trains attended the movement that constitutes the basis of the suit. Indeed, the appellee admits that "the authorities put it beyond our power to complain of this evidence."

That the "hazards" attending a train movement constitute an element to be considered in applying the statute in question was made clear in the leading case of United States v. Erie R. Co., supra, at page 408 of 237 U. S., 35 S. Ct. 621, 624:

"Thus it is plain that in common with other trains using the same main-line tracks, they were exposed to hazards which made it essential that appliances be at hand for readily and quickly checking or controlling their movements."

Lest it be argued that the foregoing statement would not apply in the instant case, since here there was no movement along main-line tracks, it is observable that the Supreme Court, in the Northern Pacific R. Co. Case, supra, has made it clear that the matter of main-line tracks has no legal significance in this connection:

"But there is nothing in the act which limits the application of the provision here in question [as to train brakes] to operations on main line tracks." Page 254 of 254 U. S., 41 S. Ct. 101, 102.

See, also, United States v. Southern Pacific Co. (C. C. A. 9) 60 F.(2d) 864, 865, certiorari denied 287 U. S. 667, 53 S. Ct. 291, 77 L. Ed. 575, and United States v. Galveston, H. & H. R. Co. (C. C. A. 5) 255 F. 755, 757, 758.

Since the evidence to be adduced at the new trial of this case may not be the same as that presented at the first trial, we are not determining whether or not the question of the sufficiency of the evidence in the court below presented a matter of fact. For the decision of the instant case it is sufficient to pass solely upon the admissibility of the evidence as to safety in complying with the statute. As we have said, we believe that the admission of such evidence was prejudicial error.

Judgment reversed, and case remanded for further proceedings not inconsistent with the views herein expressed.

WILBUR, Circuit Judge.

I concur in the reversal and also in the opinion holding that error was committed in receiving appellee's evidence.

It seems to me that in this case where there is no controversy over the facts the question of whether or not the movement of the assembled cars is a train movement or a switching movement is one of law to be decided by the court. In U. S. v. Northern Pac. R. Co., 254 U. S. 251, 41 S. Ct. 101, 102, 65 L. Ed. 249, the Supreme Court apparently treated the question involved as one of law, and decided that the car movement therein described was a "train" movement, stating: "* * * And the cases cited show that transfer trains, like those here involved, are 'trains' within the meaning of the act." The Supreme Court in Louisville & Jeffersonville Bridge Co. v. United States, 249 U. S. 534, 39 S. Ct. 355, 63 L. Ed. 757, answered a question certified by the Circuit Court of Appeals as to whether or not the movement of cars therein described was a train movement, or, rather, a movement of cars such as required that 85 per cent. of the train brakes should be coupled up so as to be under engine control under the Safety Appliance Act. The affirmative answer of the court necessarily involved the conclusion that the question was one of law, for the Supreme Court in law actions does not pass upon disputed questions of fact nor will it answer questions of fact certified by the Circuit Courts of Appeals. 28 USCA § 346; United States Supreme Court Rule 34; News Syndicate Co. v. N. Y. Central R. Co., 275 U. S. 179, 48 S. Ct. 39, 72 L. Ed. 225; U. S. v. Rider, 163 U. S. 132, 16 S. Ct. 983, 41 L. Ed. 101; Mexican Cent. R. Co. v. Eckman, 187 U. S. 429, 23 S. Ct. 211, 47 L. Ed. 245; Baltimore & Ohio R. Co. v. Interstate C. Comm., 215 U. S. 216, 30 S. Ct. 86, 54 L. Ed. 164; U. S. v. Mayer, 235 U. S. 55, 35 S. Ct. 16, 59 L. Ed. 129. Neither will the Supreme Court answer mixed questions of law and fact so certified. Hallowell v. U. S., 209 U. S. 101, 28 S. Ct. 498, 52 L. Ed. 702; Graver v. Faurot, 162 U. S. 435, 16 S. Ct. 799, 40 L. Ed. 1030. In our own recent decisions where the facts about the movement were not disputed, we have treated the question as to whether or not the movement of cars is a train movement or a switching movement as a question of law in applying the Safety Appliance Act. Great Northern R. Co. v. U. S. (C. C. A.) 297 F. 692; U. S. v. Northern Pacific R. Co. (C. C. A.) 54 F.(2d) 573; U. S. v. So. Pacific Co. (C. C. A.) 60 F.(2d) 864.

I do not think that the case of Philadelphia & R. Ry. Co. v. Bartsch, 9 F.(2d) 858, decided by the Circuit Court of Appeals for the Third Circuit, is in conflict with this view, but if there is anything to the contrary therein, it seems to me to be in conflict with the numerous decisions of the Supreme Court holding that certain movements of cars are

train movements within the meaning of the Safety Appliance Act.

If it is true that the question as to whether or not a movement of cars under circumstances not in dispute is a question of law under the Safety Appliance Act, it is entirely immaterial as far as this appeal is concerned whether or not the evidence complained of was erroneously admitted by the trial court. If under all the evidence the decision must necessarily have been in favor of the railway company on the theory that this was a switching movement and not a train movement, then the evidence which was favorable to the railway company in regard to the dangers of coupling up the train would be quite immaterial and should be ignored by us in determining the legal question, namely, that the movement was a switching movement. On the other hand, if as a matter of law the movement was a train movement, we should so decide without regard to the evidence erroneously admitted.

The trial court was evidently of the opinion that the question of whether or not the movement of cars was a train movement or a switching movement was a question of fact for in ruling on the motion of the government for a directed verdict the court stated:

"The challenge to the sufficiency of the evidence is overruled and the motion to strike denied, or to direct a verdict in favor of the plaintiff, is denied. Whether this was a switching movement or transfer movement, is a question of fact. If it was so clear under the evidence that the court could hold that reasonable minds could not differ, it might for that reason, take it from the jury, but as the court views it, this is not such a case."

The court instructed the jury that the issue was one of fact. I quote from the instruction to that effect as follows:

"This case is a question of fact. You are the sole and exclusive judges of every question of fact in the case. * * * "

The real question in dispute was whether or not the entire movement of 1.45 miles made without a stop, or any part of it, was a train movement. This, as I have stated, was a question of law. The only instruction given by the court to the jury upon that subject is as follows:

"The court instructs the jury that a switching operation is the assembly of cars into a unit to be later hauled as such unit from the point of assembly to some other point. It has been pointed out that breaking up of a train, after it has been hauled to its destination is also a switching movement; but that is not necessary to be considered further in this case. For if it was a switching movement, it was because of the assembly of cars for a train movement.

"If you should find that at the time and place where the offense referred to in the complaint is alleged to have occurred, the engine and cars were being used in a switching operation and was not then run as a train, your verdict must be for the defendant; if this movement of these twelve cars was not a switching movement, then it was a train movement, and your verdict should be for the plaintiff."

The reversal of the case without considering the questions raised by the government as to its instructions refused will probably be assumed, in the new trial ordered, to be a tacit approval of the instructions given, although I do not understand that the majority of the court so intends, and also of the rulings refusing instructions requested by the government. It seems to me that the instruction given entirely fails to define adequately a train movement or give the jury an understanding of the problem submitted to them. Two instructions, one numbered 5 and one numbered 6, requested by the government, in my opinion should have been given if the court denied a motion for a directed verdict. These instructions are as follows:

"5. The court instructs the jury that the movement of a train is the movement of a locomotive and one or more cars as a unit, either following the assembling or preceding the breaking up of such unit, either on main line tracks, or on what may be called lead tracks or tracks connecting two different sections of the same yard.

"6. The court instructs the jury that in determining whether the movement of the locomotive and 12 cars in question was a train movement or a switching operation, the jury must give no consideration to, but should ignore, the fact (a) that the locomotive was equipped as a switching locomotive; (b) that the crew of this movement was designated by defendant as a switching crew; (c) that it was only operated at slow speed; (d) that the defendant had adopted certain safety precautions, such as providing watchmen to flag vehicular traffic or requiring stops to be made at designated points; (e) that the movement was wholly within what defendant has designated as yard limits and not over a main line; (f) that the operation of the required percentage of power or train brakes on the locomotive and 12 cars would result in inconven-

ience or some additional expense to the defendant; (g) that immediately preceding or following the movement of the 12 cars in question, locomotive No. 5 was engaged in switching service; (h) or that, in the opinion of defendant's officials or employees, the operation of locomotive No. 5 and the 12 cars was just as safe without the use of additional power or train brakes as it would be with them. These are all immaterial."

I must repeat that in these observations I am speaking for myself only, and that in my view the court should have instructed the jury either that the movement in question was a train movement or that it was a switching movement. I do not express my view as to which way the instruction should be for the reason that the majority of the court has failed to consider that question and therefore an expression of my opinion would not be helpful and might be confusing in the further progress of the case. I do not believe that anything new will be or can be developed on a new trial which will affect the legal question involved.