**UNITED STATES of America,**
**Appellant,**

v.

**The OGDEN UNION RAILWAY AND**
**DEPOT COMPANY, Appellee.**

**No. 8762.**

United States Court of Appeals
Tenth Circuit.

Dec. 8, 1966.

H. Ralph Klemm, Salt Lake City, Utah, and J. Thomas Furphy (William T. Thurman, U. S. Atty., on brief), for appellant.

Howard F. Coray, Salt Lake City, Utah (Bryan P. Leverich and Norman Kettner, Salt Lake City, Utah, on brief), for appellee.

Before MURRAH, Chief Judge, and ALDRICH * and SETH, Circuit Judges.

ALDRICH, Circuit Judge.

This is an appeal by the government from the dismissal of certain counts of a complaint brought against the Ogden Union Railway and Depot Company for alleged violations of the Safety Appliance Acts, 45 U.S.C. §§ 1–10. The dismissed counts present the single question whether, when defendant was engaged in switching operations, it was obliged to comply with § 9 of the Act. It is defendant's position that this section, which relates exclusively to power brakes, is applicable only to cars engaged in train movements, which, concededly, these cars were not.

As originally passed, and for sixty years thereafter, this statute, unlike some of the other sections, clearly and concededly referred only to train movements. United States v. Seaboard Air Line R. Co., 361 U.S. 78, 80 S.Ct. 12, 4

* By Designation.

L.Ed.2d 25; United States v. Northern Pacific R. Co., 254 U.S. 251, 41 S.Ct. 101, 65 L.Ed. 249; Louisville & Jeffersonville Bridge Co. v. United States, 249 U.S. 534, 39 S.Ct. 355, 63 L.Ed. 757; United States v. Erie R. Co., 237 U.S. 402, 35 S.Ct. 621, 59 L.Ed. 1019; Carbon County Ry. Co. v. United States, 10 Cir., 309 F.2d 938. It did not require that all cars in the train have power brakes, but only that 50% should. By another provision, however, it authorized the ICC, after hearing, to increase this percentage. By regulation, 49 C.F.R. 132.1, the percentage now stands at 85.

The original statute did not define what was a sufficient power brake, but the Association of American Railroads early adopted a recommended code of standards and rules. In 1958 § 9 was amended by including provisions to make this recommended code obligatory upon the industry. A further sentence was added, upon which the government predicates its present position. This sentence reads,

"The provisions and requirements of this section shall apply to all trains, locomotives, tenders, cars, and similar vehicles used, hauled, or permitted to be used or hauled, by any railroad engaged in interstate commerce."

Although this sentence said nothing about the movements involved, and in the face of a long history that the "provisions of this section" related only to train movements, the government contends that switching movements were now to be covered. Principally, as we understand it,[1] this contention is based upon the phrase "used or hauled", it being conceded that switching, like many other operations, is within the general category of use or haul. United States v. Erie R. Co., supra, 237 U.S. 407, 35 S.Ct. 623. The government contends that because the words "used or hauled", when appearing in other Safety Appliance Acts, include switching operations as well as train movements they must necessarily have that significance here. However, although the statute must be strictly applied, words within it take their meaning from the grammatical and practical context in which they appear. Cf. United States v. Chicago, St. P., M. & O. Ry. Co., 7 Cir., 41 F.2d 927. In the present case the words "used or hauled" occur in a sentence that refers back to, and is dependent upon, provisions requiring brakes on cars used in trains. Common logic suggests that the phrase in this context is shorthand for "used or hauled in a train movement." Common sense suggests that where a statute has long been limited to train movements, the amendment would say "used or hauled in any movement" if that new scope of purpose was intended. This would seem particularly so when the government has been unable to suggest any increase in safety that would be afforded by having power brakes in mechanically good condition at a time when the nature of the movement would not permit the application of the power.[2]

Most important, however, is the fact that the government's broad interpretation of the added sentence contravenes the sense of the provisions which precede it, and upon which it depends. There is nothing in the complaint to indicate that the single car referred to in each count as having defective brakes constituted more than 15% of the unit being used or hauled. In its memorandum to the district court, from which it has not departed, the government stated specifically, "The unit of violation is a car." If this is sound, the provisions retained in the statute as to percentage of cars are now not only meaningless, but contradictory. The statute cannot at the

1. We need not comment upon the government's repeated assertion that this is a "humanitarian" statute, a proposition that no one disputes. Carbon County Ry. Co. v. United States, supra.

2. The power (air) comes from the locomotive. In switching, the cars are being separated, and may be being "humped" or "bumped", proceeding entirely independently of the locomotive.

one time apply to a percentage of cars and to all cars.

Significantly enough, until the present action was brought, the ICC itself, so far as appears, had taken the position that the 1958 amendment did not enlarge § 9 to include other than train movements. Regulation 132.11(c), 49 C.F.R. § 132.11(c), adopted following the amendment, still refers exclusively to trains.[3] This contemporary interpretation has now been supplanted by very belated and, we believe, unsupported second thoughts.

 Rather than the substantial change for which the government contends, we think that the sentence upon which it relies served the same purpose as the other additions made by the 1958 amendment, namely, the purpose stated in the title to the amending Act:

> "The bill amends the Safety Appliance Acts to give the Interstate Commerce Commission authority to establish rules, standards, and instructions for the installation, inspection, maintenance and repair of power or train brakes."

No legislative history suggests any broader intent. Before this sentence was added, § 9, in speaking of the components of the train, referred simply to "cars." 32 Stat. 943. We believe the added sentence was meant to resolve beyond peradventure that the requirements of the code which was being adopted applied to every type of vehicle used or hauled in the train, regardless of its character, and to avoid the possibilities of claiming, as had been done in the past, that some vehicles did not qualify as cars. See, e. g., United States v. Chicago, St. P., M. & O. Ry. Co., supra (locomotive and tender); with which compare Johnson v. Southern Pacific Co., 196 U.S. 1, 25 S.Ct. 158, 49 L.Ed. 363 (locomotive); Hoffman v. New York, N. H. & H. R. Co., 2 Cir., 74 F.2d 227 (gasoline track car; hand car); Moore v. St. Joseph & G. I. Ry. Co., 268

Mo. 31, 186 S.W. 1035, aff'd 243 U.S. 311, 37 S.Ct. 278, 61 L.Ed. 741 (tenders).

We find the government's claim entirely lacking in merit. The judgment dismissing the complaint is affirmed.

---

3. "Each train must have the air brakes in effective operating condition, and at no time shall the number and location of operative air brakes be less than permitted by Federal requirements. When piston travel is in excess of 10 inches, the air brakes cannot be considered in effective operating condition."